2004 ND 30

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Brian BOLLINGBERG, Defendant and Appellant.**

Nos. 20020348–20020350.

Supreme Court of North Dakota.

Jan. 28, 2004.

Kathleen K. Trosen, State's Attorney, Fessenden, N.D., for plaintiff and appellee.

Steven M. Light of Larivee & Light, Grand Forks, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Brian Bollingberg is appealing from a Southeast Judicial District Court criminal judgment and commitment after a jury convicted him of a class A misdemeanor and two class B felonies for deceptive writings. Brian Bollingberg argues the district court erred in denying his motion to suppress evidence he claims was obtained in violation of the Fourth Amendment. He also argues the district court erred in denying his motion for judgment of acquittal on the misdemeanor count. Because Bollingberg's motion to suppress was properly denied, we affirm.

I

[¶ 2] In January 2001, two separate complaints were filed, each charging Brian Bollingberg with deceptive writings. In April 2001, another complaint was filed, charging Bollingberg with the same. The charges against Bollingberg arose from his separate dealings with two individuals. His felony charges arose from dealings with Delmer Sukut, who had filed a civil suit against Bollingberg regarding missing cattle he had left at Bollingberg's place. Bollingberg's answer to the civil suit included two bills of sale listed as exhibit A and exhibit B, now State's exhibits 3 and 4.

These documents were signed; however, the signatures were forged. The documents purported to be signed by Sukut; however, he testified he had not signed these documents.

[¶3] The misdemeanor charge arose from dealings with Alan Klain and Jayson Walker. Klain and Walker purchased thirty head of cattle from Bollingberg for $875 per head and were informed the cattle should all give birth in May 2000. A bill of sale was given in exchange for the payment. Eight of the cows did not give birth, and Bollingberg told Klain and Walker he would exchange the cows for cow-calf pairs. Klain and Walker dropped off their cows but did not receive the cow-calf pairs. They did, however, receive $550 for each cow they returned. A signed bill of sale was sent with this payment. The bill of sale contained what purported to be Klain's signature; however, Klain testified he had not signed the bill of sale.

[¶4] In June 2001, Fred Frederikson, the East River Fieldman for the North Dakota Stockmen's Association, applied to the Southeast Judicial District Court for a search warrant to search the premises, outbuildings, vehicles, and curtilage at Brian Bollingberg's residence (15 County Highway 5, Bremen, County of Wells, North Dakota); to search for all books and records relating to the sale or lease of cattle, including computer records and branding irons and tags; and to search for all evidence relating to the creation of deceptive, traced, forged, or altered writings. Frederikson investigates illegal activities relating to livestock within the State of North Dakota.

[¶5] In his affidavit, Frederikson alleged he received a complaint from Sukut about missing cattle kept at Bollingberg's farm. The affidavit alleged Bollingberg failed to make contract payments to Sukut and a civil collection action was pending between the parties. Frederikson further alleged that Sukut claimed his signatures on several exhibits attached to Bollingberg's answer in the civil action were forged. He alleged these documents had been submitted to a handwriting expert who concluded it was probable they were traced forgeries. He alleged he has been in the personal residence of Bollingberg and has observed cattle business records at the residence on prior occasions. He stated that he believed there was probable cause to search the premises, outbuildings, vehicles, and curtilage at Bollingberg's residence.

[¶6] The search warrant stated there was probable cause to believe the property so described was being concealed at the outbuildings, vehicles, and curtilage at Brian Bollingberg's residence, and it authorized a search of the same. The probable cause and command portions of the search warrant did not mention premises.

[¶7] On June 27, 2001, Frederikson and numerous other law enforcement officers searched Bollingberg's house, and several items of evidence were taken, including State's exhibit 14, a bill of sale signed by Alan Klain; State's exhibit 16, a blank bill of sale; State's exhibit 17, Bollingberg's computer; State's exhibit 53, a brand release book; and State's exhibit 54, a brand release book.

[¶8] On March 26, 2002, Bollingberg moved to suppress the evidence found in his house. On April 4, 2002, a suppression hearing was held, and Bollingberg's motion to suppress was denied. During the trial on the charges for deceptive writings, Bollingberg moved for a judgment of acquittal on the misdemeanor charge because he felt a reasonable person could not conclude his conduct exhibited intent to deceive or intent to harm. Bollingberg's motion was

denied. The jury found Bollingberg guilty of all charges. This appeal followed.

[¶ 9] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 29–01–12 and 29–28–06.

## II

[¶ 10] Bollingberg argues the district court erred in denying his motion to suppress evidence found during the search of his house, because the search warrant did not provide for such a search and because the good-faith exception to the exclusionary rule did not apply in this case.

[¶ 11] The State argues Bollingberg did not properly preserve this issue on appeal, because he misstated the date of the search and did not include a copy of the brief in support of the motion to suppress in his appendix. The State does not cite any authority to support its argument. An argument without relevant authority or citation is assumed to be without merit. *Peters–Riemers v. Riemers*, 2002 ND 49, ¶ 7, 641 N.W.2d 83. Further, a teleconference was held on April 4, 2002, during which the district court had an opportunity to intelligently rule on this issue. " 'One of the touchstones for an effective appeal on any proper issue is that the matter was appropriately raised in the trial court so it could intelligently rule on it.' " *State v. Anderson*, 2003 ND 30, ¶ 6, 657 N.W.2d 245 (quoting *State v. Osier*, 1999 ND 28, ¶ 14, 590 N.W.2d 205). We conclude this issue was properly preserved.

[¶ 12] Bollingberg argues the search of his house exceeded the scope of the search warrant, because the command line did not provide for a search of his premises or the equivalent.

[¶ 13] When reviewing the district court's decision on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts of testimony in favor of affirmance. *State v. Tognotti*, 2003 ND 99, ¶ 5, 663 N.W.2d 642. The district court's decision is affirmed unless there is no sufficient competent evidence to support the decision, or unless the decision goes against the manifest weight of the evidence. *Id.* This standard recognizes the importance of the district court's opportunity to observe the witnesses and assess their credibility, and great deference is given to the district court in suppression matters. *State v. Matthews*, 2003 ND 108, ¶ 8, 665 N.W.2d 28. If the review involves a question of law, it is fully reviewable on appeal. *Id.*

[¶ 14] The Fourth Amendment provides protection from unreasonable searches and seizures. *U.S. Const. amend. IV*. A search and seizure has occurred if a person has a reasonable expectation of privacy in an area searched or in materials seized. *Matthews*, 2003 ND 108, ¶ 10, 665 N.W.2d 28. Warrantless searches inside a person's house are presumptively unreasonable. *Id.* (citing *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). Generally, a search authorized by a search warrant is limited to the place described in the warrant and does not include additional or different places. *State v. Erickson*, 496 N.W.2d 555, 560 (N.D.1993).

[¶ 15] In this case, a search warrant was requested to search Bollingberg's house; however, the command line of the warrant did not authorize such a search. Further, the warrant did not state there was probable cause to search the house. The search warrant stated that Frederikson had alleged in his affidavit that the premises, outbuildings, vehicles, and curti-

lage at Bollingberg's residence contained evidence of the number and brands of cattle located at the premises; books and records relating to the sale or lease of cattle, including computer records and branding irons and tags; and evidence relating to the creation of deceptive, traced, forged, or altered writings, including computer records, which constituted evidence of a criminal offense.

[¶ 16] The search warrant stated there was probable cause to believe the property described was being concealed at the outbuildings, vehicles, and curtilage at Bollingberg's residence. The search warrant also authorized a search of the outbuildings, vehicles, and curtilage at Bollingberg's residence. The search warrant further authorized the seizure of all documents and computers relating to the foregoing for examination by law enforcement personnel.

[¶ 17] The district court concluded that the search warrant was not invalid and that a typographical error was likely the reason "premises" was not on the command line of the warrant. The court said it would have been reasonable for the officers to understand from the four corners of the document that something else needed to be searched. The district court explained that the second paragraph of the command portion of the warrant authorized seizure of computers and documents and that one would not likely find these things in outbuildings, vehicles, or curtilage. The district court stated an officer could reasonably assume, given the top portion of the search warrant and the second paragraph of the command, that premises was implied.

[¶ 18] A court may look to other parts of the warrant to determine whether the command portion of the warrant suffers from a clerical error. *State v. Delarosa*, 2003 Wash.App. Lexis 2505, *4. In

*Delarosa,* the court considered an argument similar to Bollingberg's. Delarosa argued his motion to suppress evidence found on his person and his premises was improperly denied, because the search warrant authorized only the search of a vehicle. *Id.* at *2. The court reasoned there was no indication of any logical reason why the court would prohibit such a search. *Id.* at *4–5. It stated the inference existed that the body of the warrant supported such a search and that a clerical error prevented the proper description of the premises to be searched. *Id.*

[¶ 19] In Bollingberg's case, the body of the search warrant explained that the premises contained the items the authorities were to look for, including documents and computer records. The search warrant specifically authorized the seizure of all documents and computers. Also, there is no indication in the warrant to provide a logical reason to prohibit the search of the premises. These facts indicate a clerical error. The affidavit of Ted Seibel, the Wells County State's Attorney at the time, further supports that a clerical error was made. His affidavit states he inadvertently forgot to type in premises when creating the warrant. Because the omission of "premises" from the probable-cause portion of the search warrant and from the command line was clearly a technical error, we conclude the district court did not err in concluding the search warrant was valid.

[¶ 20] Because we conclude the search warrant was valid, we need not address the good-faith exception or the State's inevitable-discovery and harmless-error arguments.

### III

[¶ 21] Bollingberg also argues the district court erred in failing to grant

his motion for judgment of acquittal on the misdemeanor.

[¶ 22] "The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information, or complaint after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." N.D.R.Crim.P. 29(a).

[¶ 23] "In reviewing a question of sufficiency of the evidence under N.D.R.Crim.P. 29(a), we do not resolve conflicts in the evidence or reweigh the credibility of the witnesses." *State v. Weaver,* 2002 ND 4, ¶ 10, 638 N.W.2d 30. On appeal, this Court determines only whether there is evidence that would have allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. *Id.*

[¶ 24] "A person is guilty of an offense if, with intent to deceive or harm the government or another person, or with knowledge that he is facilitating such a deception or harm by another person, he knowingly issues a writing without authority to issue it or knowingly utters or possesses a deceptive writing." N.D.C.C. § 12.1–24–03(1). Deception is defined as:

> Creating or reinforcing a false impression as to fact, law, status, value, intention, or other state of mind; or obtaining or attempting to obtain public assistance by concealing a material fact, making a false statement or representation, impersonating another, concealing the transfer of property without adequate consideration, or using any other fraudulent method; but deception as to a person's intention to perform a promise may not be inferred from the fact alone that the person did not substantially

perform the promise unless it is part of a continuing scheme to defraud.

N.D.C.C. § 12.1–23–10(2)(a).

[¶ 25] "The term 'deception' does not, however, include falsifications as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed." N.D.C.C. § 12.1–23–10(2)(g). Harm means "loss, disadvantage, or injury to the person affected, and includes loss, disadvantage, or injury to any other person in whose welfare he is interested." N.D.C.C. § 12.1–01–04(14).

[¶ 26] The misdemeanor charge in this case arose from dealings with Alan Klain and Jayson Walker. Klain and Walker purchased thirty head of cattle from Bollingberg for $875 per head, and were informed the cattle should all give birth in May 2000. A bill of sale was given in exchange for the payment. Eight of the cows did not give birth, and Bollingberg indicated he would exchange the cows for cow and calf pairs. Klain and Walker dropped off their cows but did not receive the cow-calf pairs. They did, however, receive $550 for each cow they returned. A bill of sale sent with this payment contained the forged signature of Alan Klain. The bill of sale differed from the previous bills of sale in that it did not say bred cows and indicated the sale was "as is."

[¶ 27] Bollingberg argues a reasonable person could not conclude that he intended to create or reinforce a false impression. Bollingberg first argues a reasonable person could not conclude he intended to create or reinforce a false impression because Klain would know whether or not he had signed the document. We conclude this argument is without merit because the forged bill of sale was an attempt both to convince Klain the cattle were all paid for and to discourage claims for the cattle.

[¶ 28] Bollingberg also claims the bill of sale could not be seen by a reasonable person to have pecuniary significance because it did not alter the agreed-upon terms of the parties. The evidence, however, shows that Bollingberg relied on this document when trying to pay Klain and Walker the value for open cows instead of bred cows. Bollingberg also claims a reasonable person could not conclude there was intent to harm. The evidence, however, shows that Bollingberg was trying to get out of paying the full price for the cattle sold to Klain and Walker.

[¶ 29] We conclude these arguments are without merit.

[¶ 30] Bollingberg also argues that if this Court reversed his misdemeanor conviction because of insufficient evidence, his felony convictions should be reversed and remanded. Because there is sufficient evidence to sustain his misdemeanor conviction, we do not need to address whether Bollingberg was subjected to unfair prejudice in his felony convictions.

[¶ 31] Because the search warrant was valid as to Bollingberg's premises, we conclude the district court did not err in denying Bollingberg's motion to suppress. We therefore affirm the judgment of the district court.

[¶ 32] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.