2005 ND 105

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Michelle Renae DRISCOLL, a/k/a Michelle Pricilla Driscoll, Defendant and Appellant.**

No. 20040292.

Supreme Court of North Dakota.

June 2, 2005.

Tracy J. Peters, Assistant State's Attorney, Fargo, ND, for plaintiff and appellee.

Dennis D. Fisher, Stefanson, Plambeck, Foss & Fisher, Moorhead, MN, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Michelle Driscoll appealed from an order denying a motion to suppress evidence, a criminal judgment and commitment, and an order denying a motion for a new trial, all of which arise from drug-related charges brought against her. We affirm the district court's orders and the criminal judgment and commitment.

[¶ 2] A confidential informant ("CI") worked with Fargo Police to buy cocaine and methamphetamine from an individual named Williams. During two separate drug buys, Williams met the CI at a Fargo location to arrange the drug purchase and obtain money from the CI. On one occasion, Williams, who was being tracked by police, proceeded alone to a Fargo apartment building to obtain the drugs. On the other occasion, both Williams and the CI proceeded to the Fargo apartment building in the CI's automobile. The CI remained in the automobile while Williams once again entered the apartment building. During the first buy, Williams called the CI from a phone number later traced to a specific apartment unit in the building. The purpose of the phone call was to tell the CI that the drug source wanted more money for the drugs. The apartment unit in question was rented to Scott Alan Olson and a search of the Fargo Police computing system revealed Olson had been named with several other individuals in cocaine trafficking in the Fargo/Moorhead area. Police also learned Olson previously had been involved in a verbal dispute with a female, Michelle Driscoll, at this apartment unit. During the second buy, police,

who were listening to the conversation between Williams and the CI via a listening device, heard Williams refer to his drug source as a female and also as "they."

[¶ 3] Police obtained and executed a search warrant for the unit and discovered Scott Alan Olson and Michelle Driscoll in the apartment. Driscoll, who was wearing pajamas, ran into the bathroom and attempted to flush large quantities of methamphetamine down the toilet. Police secured both occupants of the residence. During a search of a bedroom, police discovered a purse belonging to Driscoll. The purse contained, among other items, methamphetamine, a large quantity of cash, an address book, an advertisement for a scale, and six pages of letters. Police also found marijuana in a nightstand in the bedroom. Olson told police Driscoll had been staying at the apartment six nights a week for approximately five months. Driscoll told police she had a purse, computer, and clothes at the apartment. The State charged Driscoll with four drug-related offenses: possession of a controlled substance with intent to deliver, methamphetamine; possession of a controlled substance, methamphetamine; possession of a controlled substance, marijuana; and possession of drug paraphernalia. A jury convicted Driscoll on all four counts.

## I.

[¶ 4] Driscoll argues there was insufficient probable cause to justify issuance of the search warrant. Driscoll's arguments revolve around an affidavit made by Detective Daniel T. Hudson of the Fargo Police Department in support of the application for the search warrant. In his affidavit, Detective Hudson set forth the circumstances surrounding the two drug buys and that Williams twice proceeded to the same apartment building to obtain the drugs. Detective Hudson noted Williams'

telephone call from the apartment unit in question. Finally, Detective Hudson relayed that, "through researching the Fargo Police computer system," he learned "Scott Alan Olson has been named with several other individuals in cocaine trafficking in the Fargo/Moorhead area."

[¶ 5] Driscoll argues a sufficient nexus did not exist between the apartment unit and the contraband sought. Specifically, Driscoll points out Williams never identified a specific apartment unit or any person in an apartment unit as the source of the drugs. Williams did not offer a physical description of his supplier. And, even though Driscoll concedes the existence of the phone call from Olson's apartment during the first buy, Driscoll claims there is no evidence Williams was using Olson's phone for "anything other than a phone call." Driscoll also labels the attempt to tie Olson to narcotics trafficking as "so sketchy and innocuous as to render it totally and completely unreliable." Driscoll asserts that police intelligence files are not proof of any criminal wrongdoing and should have been discounted by the magistrate. Driscoll also finds fault with police for failing to apprehend Williams to obtain additional credible evidence concerning the source of the contraband.

### A.

[¶ 6] The U.S. Constitution provides "no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also* N.D. Const. art. I, § 8 (same). We very recently discussed the topic of probable cause to search in *State v. Nelson*, 2005 ND 59, 693 N.W.2d 910, where we stated:

The existence of probable cause to issue a search warrant is a question of law. Probable cause to search exists if the

facts and circumstances relied on by the magistrate would warrant a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched. Probable cause to search does not require the same standard of proof necessary to establish guilt at a trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place. All of the information presented to establish probable cause should be taken together, not analyzed in a piecemeal fashion, and the magistrate is to make a practical commonsense decision whether probable cause exists to search that particular place.

. . . .

On appeal, we use the totality-of-the-circumstances test to review the sufficiency of the information before the magistrate independent of the court's decision. The magistrate is to make a practical, commonsense decision whether probable cause exists to search that particular place. We generally defer to a magistrate's determination of probable cause, and will not disturb a magistrate's conclusion that probable cause exists if there is a substantial basis for the conclusion.

To establish probable cause for a search, there must be a nexus between the place to be searched and the contraband sought, and circumstantial evidence may be enough to establish the nexus.

*Id.* at ¶¶ 3, 16–17 (internal quotations and citations omitted).

### B.

**[¶ 7]** The affidavit in support of the search-warrant application contained sufficient probable cause to justify issuance of a search warrant for the apartment unit. Under the totality-of-the-circumstances test, there is a substantial basis for the magistrate's determination that contraband and drug evidence would probably be found in the apartment unit. Police observed Williams enter the apartment building on two separate occasions to obtain drugs. During one of these excursions, Williams placed a telephone call to the CI from Olson's apartment unit. The purpose of this call was not to engage in idle chitchat, but to inform the CI that the drug source wanted more money to complete the transaction. These circumstantial facts, standing entirely on their own, would allow a person of reasonable caution to believe there was a nexus between the drugs purchased by the CI and the apartment unit. *Cf. Illinois v. Gates,* 462 U.S. 213, 243–44 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (noting that even "innocent behavior frequently will provide the basis for a showing of probable cause").

**[¶ 8]** Although arguably part of the totality of the circumstances, we specifically decline to rely on Detective Hudson's statement that, "through researching the Fargo Police computer system," he learned "Scott Alan Olson has been named with several other individuals in cocaine trafficking in the Fargo/Moorhead area." These brief statements comprise the entire explanation provided by Detective Hudson on this matter. In *State v. Handtmann,* 437 N.W.2d 830 (N.D.1989), we refused to find probable cause to issue a search warrant based on a detective's statement that the defendant was "suspected of trafficking narcotics." *Id.* at 832, 835. These types of statements are unsupported and conclusory in nature and, without further elaboration and explanation, are insufficient to establish probable cause. *Id.* at 835; *State v. Thompson,* 369 N.W.2d 363

(N.D.1985); *State v. Schmeets,* 278 N.W.2d 401 (N.D.1979); *cf. State v. Ringquist,* 433 N.W.2d 207 (N.D.1988) (statements regarding reputation, which are illuminated by specific underlying circumstances, can support a determination of probable cause if combined with other evidence); *State v. Ronngren,* 361 N.W.2d 224 (N.D.1985) (statements regarding reputation can support a determination of probable cause if combined with other evidence).

[¶ 9] Here, Detective Hudson's statements about Olson being "named ... in cocaine trafficking" are conclusory and unsupported by specific, underlying facts. Similarly, Detective Hudson's assertions cannot qualify as statements regarding Olson's reputation because it is unknown who "named" Olson. They add no weight to a determination of probable cause. However, there is no indication in the record whether the magistrate found this statement relevant in making her decision and there was sufficient other evidence to support the magistrate's issuance of the search warrant.

[¶ 10] Driscoll's other complaints go to the manner in which Fargo Police conducted their investigation. Although police could have continued their investigation before applying for a search warrant, and police could have apprehended Williams and questioned him regarding his drug source, that they did not do so is irrelevant to the question of whether probable cause to search existed at the time the warrant was issued.

## II.

[¶ 11] Driscoll also asserts the contents of her purse should be suppressed because police needed to obtain a second warrant to validly inspect the purse. Driscoll claims the search was a violation of her reasonable expectation of privacy because the purse and certain items contained therein were not sufficiently particularized in the detective's affidavit. Also, Driscoll argues certain items are so private and personal that the law should afford these items significantly more protection under the Fourth Amendment, thereby requiring a greater degree of particularization. Driscoll labels herself a "visitor to the Scott Olson apartment" deserving of heightened protection. Finally, Driscoll challenges the search warrant on its face as an example of police overreaching.

[¶ 12] The search warrant is not invalid on its face. The search warrant was limited to the specific apartment unit that police had probable cause to search. The objects of the search revolved around suspected drug trafficking at the apartment unit. As the magistrate provided in the search warrant:

> Affidavit having been made before me by Det. Daniel T. Hudson, Fargo Police Department, that they have reason to believe that at the property located at 1444 32nd St. SW # 210 Fargo, Cass County, North Dakota, there is now being concealed property more particularly described on the attached "Exhibit A" which constitutes evidence of the commission of a criminal offense, contraband, the fruits of crime, or things otherwise criminally possessed, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, and as I am satisfied that there is probable cause to believe that the property so described is being concealed at the premises above described [the application for search warrant is granted].

[¶ 13] Given the facts of this case, a search for controlled substances, drug paraphernalia, drug money, records of drug transactions, numerical data found on electronic devices, and indicia of residence of

the apartment unit, all of which were specifically enumerated in Exhibit A, is neither indicative of police overreaching, nor the equivalent of a general police search.

[¶ 14] The search warrant made no mention of Driscoll or her personal property. When the application for the search warrant was made, however, police had no knowledge of exactly who was responsible for the drug activity. But, police had probable cause to believe drug activity was taking place in the apartment unit, which provided the requisite justification to search. Further, it was not necessary that the search warrant particularize exactly where the drug evidence would be found in the apartment unit. *See* 2 Wayne R. LaFave, Search and Seizure § 4.10(b), at 742–43 (4th ed.2004). We have noted the reason for the particularity requirement:

> The purpose of the particularity requirement is to prevent exploratory rummaging in a person's belongings by a general search. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. A search warrant must particularly describe the things to be seized.

*State v. Schmitz*, 474 N.W.2d 249, 251 (N.D.1991) (internal quotations and citations omitted). It is "generally recognized that the degree of particularity required is flexible and will vary depending upon the circumstances presented, including the purpose for which the warrant was issued, the place to be searched, the type of crime involved, and the nature of the items sought." *State v. Dallmann*, 441 N.W.2d 912, 914 (N.D.1989). As we observed in *State v. Gronlund*, 356 N.W.2d 144 (N.D. 1984):

> The proper inquiry is whether or not the search was reasonable under the circumstances. It is essential that the particularity requirement be applied with some degree of flexibility, depending on the type of property to be seized. The purpose of the particularity requirement is to minimize the chances that the executing officer will exceed the scope of the permissible search because of confusion or uncertainty. A rigid and unrealistic reading of a search warrant is not mandated. What constitutes reasonable particularity must be determined in light of practicality, necessity and common sense.

*Id.* at 146 (internal citations and quotations omitted).

[¶ 15] In *State v. Iverson*, 187 N.W.2d 1, 31 (N.D.1971), we quoted the particularly relevant language from *United States v. Robinson*, 287 F.Supp. 245, 254 (N.D.Ind. 1968):

> Instead of preferring search warrants, a rule limiting seizure under them to the items enumerated in the description would relegate them to a secondary status, if not an anachronism in the law. What law enforcement officer would resort to a warrant where there was the possibility of making the search incident to a valid arrest? One who did would be justly chastised by his superiors and the public for incompetence. While it might be possible to describe some of the things sought with sufficient particularity to satisfy a conscientious magistrate, it will never be possible to forecast with any exactitude the items which such a search might reveal. The only reasonable rule, the one which this Court adopts, is that officers conducting a lawful search pursuant to a search warrant may seize any fruits, instruments or evi-

dence of crime which they might uncover. A warrant must still specifically describe the place to be searched and the things to be seized, and the search must be directed toward the things so described, but if in the course of that search they discover items not named in the warrant which might have been seized in a search incident to an arrest, they may also be seized in a search pursuant to a search warrant.

[¶ 16]   We said in *State v. Erickson*, 496 N.W.2d 555, 560 (N.D.1993); that "[a] search conducted pursuant to a search warrant may extend to the entire area covered by the warrant's description."

[¶ 17]   Further:
A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.
*United States v. Ross*, 456 U.S. 798, 820–21, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

[¶ 18]   Here, police were searching for, among other items, drugs and money, both of which are relatively small and easily concealed. It is quite possible that these objects would be found in a purse. Although there was conflicting testimony as to whether Driscoll's purse was open or closed, the resolution of this dispute is immaterial to our decision as, pursuant to the warrant, police were permitted to search the purse, or any other item that could reasonably house the objects of the search, whether these items be open or closed. Moreover, that a separate act of entry or opening might have been required to search the purse does not trigger a constitutional violation. *Id.*

[¶ 19]   Driscoll's argument that an additional degree of particularization is required when dealing with private and personal items is unavailing. If, in the course of executing a valid search warrant, police come across an item, be it particularized in the warrant or not, that could reasonably contain the object of their search, they are authorized to search regardless of whether the item is arguably "private" or "personal." The language from *Ross* stands for no less a proposition. *Id.;* *see also* 2 Wayne R. LaFave, Search and Seizure § 4.10(b), at 742–43 (4th ed.2004) (noting that officers executing a warrant for marijuana may search a wallet, as this is a plausible repository for marijuana).

[¶ 20]   But, special constitutional concerns arise when dealing with visitors or guests located at a residence subject to a search warrant. *See Ybarra v. Illinois*, 444 U.S. 85, 91–92, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). However, we do not believe Driscoll's argument that she was a "visitor" to the Olson apartment renders the search of her purse invalid. First, it is debatable whether Driscoll was a visitor to

the apartment unit or an actual resident. The district court specifically found that Driscoll "was a resident of this apartment even though her name was not listed on the lease agreement." This finding is not clearly erroneous. Olson told police Driscoll had been staying at the apartment six nights a week for approximately five months and Driscoll told police she had a purse, computer, and clothes at the apartment. If we examine only what police knew at the time of the search, it was still reasonable for police to conclude Driscoll was more than a mere visitor or guest. Police knew Olson and Driscoll had previously been in a verbal altercation at the apartment unit and, thus, police knew Driscoll had a prior connection to the apartment. Police heard Williams identify his drug source as both a female and as "they." Driscoll was in her pajamas when police arrived. When police entered the unit, Driscoll ran to the bathroom and attempted to flush methamphetamine down the toilet. Officers found Driscoll's purse in a bedroom containing drugs, drug paraphernalia, and cash. Viewing these facts as a whole, it was not only reasonable for police to believe the purse could contain evidence of narcotics activity, but it was also reasonable for police to view Driscoll, and her property, as being intimately involved with the apartment unit and the drug activity apparently occurring there. Accordingly, a search of Driscoll and her property is no more remarkable than a search of Olson and his property.

[¶ 21] Second, if we were to view Driscoll as a casual overnight guest or visitor to the apartment unit, we reach the same result. The district court noted the following regarding the law applicable to overnight guests:

> At a minimum, [Driscoll] was an overnight guest on numerous occasions at this apartment, including the day this search warrant was executed.

. . . .

It seems that there are two approaches used among jurisdictions in dealing with overnight guests and the search of their possessions pursuant to a search warrant for a residence at which they are found during a search. One approach is the "physical possession" test. *Minnesota v. Wills*, 524 N.W.2d 507, 510 (Minn.Ct.App.1994). Under this approach, the search of personal effects is generally upheld where the item that is searched is not in the immediate possession of the defendant. *Id.* The other approach is the "relationship" test. *Id.* Using this approach, courts focus on the relationship between the person whose personal effects are being searched and the place that is the subject of the search. *Id.*

This issue is undecided in our prior caselaw. Despite the district court's comments and the existence of secondary materials discussing this topic, *see, e.g.*, 2 Wayne R. LaFave, Search and Seizure § 4.10(b), at 743–48 (4th ed.2004), neither the State nor the defense discussed the appropriate law to apply in this situation. Without the benefit of adequate briefing, we decline to select a specific test because, regardless of the test used, we believe the search of Driscoll's purse was valid. Driscoll was not in "physical possession" of the purse, which was located in a back bedroom, at the time of the search. And, for the reasons outlined above, Driscoll had a close "relationship" to the apartment unit and the drug activity occurring there.

### III.

[¶ 22] Driscoll argues the trial court erred in refusing to grant her a new trial on the basis of newly discovered evidence. Specifically, Driscoll points to recent statements in which Williams denies that Driscoll was his drug source.

Williams' recent affidavit states he was coerced by police into incriminating Driscoll as his drug source. Williams now states he did not go into the specified apartment unit to buy drugs from Driscoll. Rather, he claims he met his drug sources, two unrelated individuals, behind the apartment building. When Williams learned that the price of the drugs had increased, one of these unrelated individuals climbed an outside balcony and entered Olson's apartment through an unlocked patio door. This individual then admitted Williams into the vacant apartment unit, and Williams proceeded to call the CI. Williams also claimed he never identified his drug source as being female. Before trial, Williams told Driscoll's attorneys and the State he would assert his Fifth Amendment privilege if called as a witness during Driscoll's trial.

[¶ 23] In *State v. Steinbach*, 1998 ND 18, 575 N.W.2d 193, we outlined the standard regarding a motion for a new trial based on newly discovered evidence:

> Under N.D.R.Crim.P. 33(a), the trial court may grant a new trial to the defendant if required in the interests of justice. To prevail on a motion for a new trial on the ground of newly discovered evidence, the defendant must show (1) the evidence was discovered after trial, (2) the failure to learn about the evidence at the time of trial was not the result of the defendant's lack of diligence, (3) the newly discovered evidence is material to the issues at trial, and (4) the weight and quality of the newly discovered evidence would likely result in an acquittal. A motion for new trial based upon newly discovered evidence rests within the discretion of the trial court, and we will not reverse the court's denial of the motion unless the court has abused its discretion. If the newly discovered evidence is of such a nature that it is not likely to be believed by the jury

or to change the results of the original trial, the court's denial of the new trial motion is not an abuse of discretion.

*Id.* at ¶ 22 (internal citations omitted).

[¶ 24] There are several problems with Driscoll's argument. Initially, there are credibility concerns with Williams' statements. According to Supplementary Offense Reports prepared by Detective Hudson and Sergeant Lynk, the serial numbers on $260.00 found during the search of the apartment unit matched the serial numbers on the police buy money used during the second drug purchase. Notably, the second drug purchase occurred on the same day police applied for and executed the search warrant for the apartment unit. If, as Williams states, Driscoll had nothing to do with the two controlled purchases orchestrated by police, it is odd, to say the least, that she came to possess nearly all of the money from the second buy in less than a day's time.

[¶ 25] Assuming Williams is telling the truth, however, it does not change our conclusion that the district court did not abuse its discretion in denying the motion for a new trial. Viewed in the most favorable light, Williams' statements only work to undermine the "theory" of probable cause posited by police, namely, that the apartment unit in question was responsible for providing the drugs obtained during the controlled buys. As its name suggests, probable cause deals in probabilities. *See Maryland v. Pringle*, 540 U.S. 366, 370–71, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). Those dealing in the probable-cause universe might act reasonably, yet, when viewed through the prism of hindsight, find their beliefs to have been in error. But, if an accepted, reasonable "theory" of probable cause subsequently proves to be untrue or unfounded, it does not retroac-

tively undermine a previously correct conclusion that probable cause to search existed, invalidate a properly issued search warrant, or release a criminal actor from culpability for crimes uncovered during the execution of the search warrant.

[¶ 26] Professor LaFave has noted "[i]t is axiomatic that hindsight may not be employed in determining whether a prior ... search was made upon probable cause" and that "an otherwise valid search is not rendered illegal by the fact that it turns out that the objects sought are not in the place searched." 2 Wayne R. LaFave, Search and Seizure § 3.2(d), at 47, 50 (4th ed.2004); *see also Hudson v. Arkansas,* 316 Ark. 360, 872 S.W.2d 68 (1994) (probable cause based on a tip the defendant possessed cocaine is not rendered invalid when cocaine is not discovered and conviction based on discovery of other contraband upheld); *Idaho v. Lewis,* 107 Idaho 616, 691 P.2d 1231, 1235–36 (1984) (probable cause to believe marijuana existed on the premises is not destroyed by the after-the-fact discovery that, although large quantities of narcotics were seized, marijuana was not present, and suppression of the other narcotics is inappropriate); *Miskovsky v. Oklahoma,* 31 P.3d 1054, 1066 n. 59 (Okla.Crim.App.2001) ("fact that the evidence sought was not found does not lessen the validity of the magistrate's determination of probable cause"); *cf. Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983) (discussing the plain-view doctrine, which "authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification" and "is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost"); *State v. Harris,* 286 N.W.2d 468, 472 (N.D.1979) (holding that "where the police have probable cause to make an arrest for one reason, and in fact do make an arrest, they may thereafter prosecute for another offense and choose not to prosecute on the charge on which the arrest was initially made if in the search incident to the arrest they learn of other bases for prosecution").

[¶ 27] Furthermore, given that the U.S. Supreme Court has refused to apply the exclusionary rule to evidence obtained in reasonable reliance on a search warrant ultimately found to be unsupported by probable cause, *see United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), we see no justification for excluding the evidence from Driscoll's purse, which was discovered pursuant to a valid search warrant supported by probable cause. If a previously invalid probable-cause determination can fail to result in exclusion, a previously valid probable-cause determination, which in hindsight has purportedly shown itself to be misconceived, certainly should not trigger exclusion.

[¶ 28] Having determined that Williams' information does not cast any legal doubt on the validity of the search warrant or the evidence presented to the jury, Williams' statements are factually irrelevant to the crimes with which Driscoll was charged and the verdicts reached by the jury. Driscoll was never charged with any crime stemming from the two controlled drug buys. Rather, she was charged with possession of drugs and drug paraphernalia and possession of drugs with intent to deliver, crimes directly stemming from the search of the apartment unit. Williams' affidavit has no factual bearing on these crimes.

[¶ 29] We affirm the district court's orders and the criminal judgment and commitment.

[¶30] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.