2015 ND 100

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Evan Joseph TAYLOR, Defendant and Appellee.**

No. 20140318.

Supreme Court of North Dakota.

April 28, 2015.

Carmell F. Mattison, Assistant State's Attorney, Grand Forks, ND, for plaintiff and appellant.

Tyler J. Morrow, Grand Forks, ND, for defendant and appellee.

McEVERS, Justice.

[¶ 1] The State appeals from a district court order granting Evan Joseph Taylor's motion to suppress evidence. We reverse the district court's order granting Taylor's motion to suppress evidence found inside his bedroom and remand for further action consistent with this opinion.

I

[¶ 2] A law enforcement officer with the Grand Forks Narcotics Task Force sought and obtained a search warrant to search a residence. In his affidavit in support of the warrant, the officer stated he received information from a University of North Dakota college student that Nathe and unknown counterparts were part of a drug trafficking organization in the Grand Forks area that distributed marijuana, psilocybin mushrooms, LSD, ecstacy, MDMA, DMT and other types of research chemicals. The Task Force had previously conducted an investigation and discovered Nathe resided at a single family dwelling, located at 1817 1st Avenue North in Grand Forks. As part of the investigation, the Task Force conducted a garbage pull at the residence. During the garbage pull, the Task Force found a pays-tub containing identifying information for Nathe and a receipt from Jimmy Johns with the name and phone number of another individual, along with items containing marijuana residue. These items included a small zip lock baggie, two screens, and two large plastic bags. Finding probable cause existed, the magistrate issued a search warrant providing:

> You are hereby commanded to conduct this search of the residence of 1817 1st Ave North in Grand Forks, and that such search shall be for the purposes of looking for and seizing all controlled substances, drug paraphernalia, and any funds derived from the sale of controlled substances, fruits of the crime and cellphones utilized in the initiation and conduction of illegal activities.

On October 24, 2013, the Task Force executed the search warrant. The Task Force found marijuana and drug paraphernalia in the common areas and in bedrooms, including Taylor's bedroom. Specifically, the Task Force found a handgun and marijuana in Taylor's bedroom. The Task Force also found checks, a passport, and a title to a vehicle all belonging to Taylor in his bedroom. Taylor did not grant the Task Force permission to search his bedroom. Taylor was arrested.

[¶ 3] Taylor was initially charged with possession of a controlled substance with intent to deliver and possession of drug paraphernalia. The information was later amended, to charge Taylor with possession of more than one ounce of marijuana and possession of drug paraphernalia. Taylor moved to suppress the evidence found in his bedroom, arguing law enforcement violated his Fourth Amendment right against unreasonable searches and seizures. Particularly, he asserted law enforcement violated his reasonable expectation of privacy by searching his private bedroom without a separate warrant. Taylor did not dispute that the search warrant executed was validly obtained; rather, he argued he had a reasonable expectation of privacy in his bedroom requiring a separate search warrant.

[¶ 4] The district court held two hearings on the motion to suppress. At the hearings, testimony revealed the residence included common areas, including a kitchen and living room, along with four separate bedrooms. Nathe's bedroom was on the first floor and Taylor's bedroom was in the basement. Nathe did not own the residence. Three out of four of the individuals who resided at the single family

dwelling were present during the search, including Taylor. All three individuals were detained in a common living area. Law enforcement did not know four unrelated individuals resided in the home prior to the day the search warrant was executed.

[¶ 5] The district court entered a memorandum decision and order granting Taylor's motion to suppress evidence, concluding the evidence found in Taylor's bedroom was not lawfully seized under the search warrant because Taylor was entitled to a reasonable expectation of privacy in his bedroom and no exigent circumstances existed which would have justified entering Taylor's bedroom without a search warrant. The State appealed.

## II

[¶ 6] On appeal, the State argues this Court should reverse the district court's order granting Taylor's motion to suppress evidence because law enforcement did not exceed the scope of the search warrant. The State contends it would be an impossible task for law enforcement to specifically articulate in a search warrant the exact location of drugs within a residence.

[¶ 7] This Court reviews a trial court's decision on a motion to suppress as follows:

We affirm the decision of a trial court on a motion to suppress, after resolving conflicting evidence in favor of affirming the decision, unless we conclude there is insufficient evidence to support the decision or the decision goes against the manifest weight of the evidence. Recognizing the importance of the trial court's opportunity to observe witnesses and assess their credibility, we accord great deference to the trial court's findings of fact in suppression matters.

*City of Jamestown v. Jerome*, 2002 ND 34, ¶ 6, 639 N.W.2d 478 (citations omitted). Whether law enforcement violated consti-

tutional prohibitions against unreasonable search and seizure is a question of law. *State v. Uran*, 2008 ND 223, ¶ 5, 758 N.W.2d 727. "[Q]uestions of law are fully reviewable, and whether a finding of fact meets a·legal standard is a question of law." *State v. Loh*, 2010 ND 66, ¶ 7, 780 N.W.2d 719.

[¶ 8] The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. *State v. Holly*, 2013 ND 94, ¶ 12, 833 N.W.2d 15. "A search and seizure has occurred if a person has a reasonable expectation of privacy in an area searched or in materials seized. Warrantless searches inside a person's house are presumptively unreasonable." *State v. Bollingberg*, 2004 ND 30, ¶ 14, 674 N.W.2d 281 (citation omitted). "Probable cause is required for a search warrant under the Fourth Amendment to the United States Constitution, ..." *State v. Rangeloff*, 1998 ND 135, ¶ 16, 580 N.W.2d 593.

[¶ 9] "A search warrant must describe with particularity the places to be searched and items to be seized." *State v. Stewart*, 2006 ND 39, ¶ 11, 710 N.W.2d 403. "Whether a warrant is sufficiently particular depends upon the surrounding circumstances, including the purpose of the warrant, the crime involved, the place to be searched, and the nature of the items sought." *Id.* "The purpose of the particularity requirement is to minimize the chances that the executing officer will exceed the scope of the permissible search because of confusion or uncertainty." *State v. Driscoll*, 2005 ND 105, ¶ 14, 697 N.W.2d 351. "Generally, a search authorized by a search warrant is limited to the place described in the warrant and does not include additional or different places." *Bollingberg*, 2004 ND 30, ¶ 14, 674 N.W.2d 281. However, "[a] search conducted pursuant to a search warrant may extend to

the entire area covered by the warrant's description." *State v. Erickson*, 496 N.W.2d 555, 560 (N.D.1993).

[¶ 10] Taylor argues the district court's grant of his motion to suppress should be affirmed because the State failed to meet its burden of proof after Taylor made a prima facie case of a Fourth Amendment violation. Taylor seems to contend that because the State did not convince the district court it had overcome the prima facie showing of an expectation of privacy in his bedroom, it had not properly raised the issue of whether law enforcement exceeded the scope of the warrant on appeal. We disagree.

[¶ 11] "A person alleging his rights have been violated under the Fourth Amendment has an initial burden of establishing a prima facie case of illegal seizure. However, after the defendant has made a prima facie case, the burden of persuasion is shifted to the State to justify its actions." *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 6, 571 N.W.2d 137 (citations omitted). The State's argument was that law enforcement had a validly executed warrant for the entire residence, justifying the search that included Taylor's bedroom. In doing so, the State preserved the issue as to whether the district court's findings meet the legal standard as a matter of law. This Court has not specifically addressed whether a person living communally in a single family dwelling has a reasonable expectation of privacy in a bedroom separate from their expectation of privacy in a home generally. We have held "[w]hether there is a reasonable expectation of privacy in a given area must be decided on a case-by-case basis." *State v. Kitchen*, 1997 ND 241, ¶ 12, 572 N.W.2d 106; *see also State v. Gatlin*, 2014 ND 162, ¶ 5, 851 N.W.2d 178 (explaining the elements this Court applies in determining the existence of a reasonable expectation of privacy); *State v. Nguyen*, 2013 ND 252, ¶ 9, 841 N.W.2d 676 (discussing federal circuit court cases regarding the reasonable expectation of privacy in various contexts). Taylor had the burden to show law enforcement should not have relied on the face of the warrant or that the scope of the warrant was exceeded. Taylor concedes the search warrant is not invalid on its face. The search warrant was issued for a specific single family residence that law enforcement had probable cause to search:

Proof by Affidavit having been made this date by Devan Greuel, agent with the Grand Forks Narcotics Task Force, and that there be reasonable grounds to believe that the crime(s) of Possession of Marijuana, Possession of other controlled substances, Possession of Drug paraphernalia and/or Possession of controlled substances with intent to deliver may be taking place in the County of Grand Forks, North Dakota and that evidence and or proceeds of those crimes may be found at or in a residence in Grand Forks, ND, located at 1817 1st Ave North.

As I am satisfied that there is probable cause to believe that the crime(s) Possession of Marijuana, Possession of other controlled substances, Possession of Drug paraphernalia and/or Possession of controlled substances with intent to deliver have occurred in the County of Grand Forks, North Dakota and that such crimes are contrary to the laws of the State of North Dakota and that evidence and or proceeds of those crimes may be found at or in a residence located at 1817 1st Ave North, in Grand Forks, ND.

Additionally, the warrant limited the search to drug trafficking related objects: "You are hereby commanded to conduct this search … for the purposes of looking for and seizing all controlled substances, drug paraphernalia, and any funds derived

from the sale of controlled substances, fruits of the crime and cellphones utilized in the initiation and conduction of illegal activities." The warrant was not limited to any particular areas of the residence.

[¶ 12] The State primarily relies on *Driscoll*, 2005 ND 105, 697 N.W.2d 351, in support of its argument that law enforcement did not exceed the scope of the search warrant. In *Driscoll*, the police obtained a search warrant for an apartment where they believed drug trafficking was taking place. 2005 ND 105, ¶¶ 2–3, 697 N.W.2d 351. While investigating the apartment, the police learned an individual, Scott Alan Olson, who had previously been involved with cocaine trafficking, resided in the apartment. *Id.* at ¶ 2. Law enforcement also discovered police had been involved in a verbal dispute at the apartment with a female, Michelle Driscoll. *Id.* Law enforcement had overheard conversations near the residence referring to the drug source as female or as "they." *Id.* When law enforcement executed the search warrant, both Olson and Driscoll were present. *Id.* at ¶ 3. During the search, law enforcement found drugs in Driscoll's purse. *Id.* According to Driscoll and Olson, Driscoll had stayed at the apartment six nights a week for approximately five months and she kept a purse, computer, and clothes at the apartment. *Id.* Driscoll argued the evidence found in her purse should be suppressed, because she has a reasonable expectation of privacy in her purse and police needed to obtain a second warrant to validly search it. *Id.* at ¶ 11. We stated:

> The search warrant made no mention of Driscoll or her personal property. When the application for the search warrant was made, however, police had no knowledge of exactly who was responsible for the drug activity. But, police had probable cause to believe drug activity was taking place in the apartment unit, which provided the requisite justification to search. Further, it was not necessary that the search warrant particularize exactly where the drug evidence would be found in the apartment unit.

*Id.* at ¶ 14. As such, we concluded law enforcement did not need to obtain a warrant to search Driscoll's purse because, under the warrant, police were permitted to search any item that could reasonably house the objects of the search. *See id.* at ¶¶ 18, 20 ("Viewing these facts as a whole, it was not only reasonable for police to believe the purse could contain evidence of narcotics activity, but it was also reasonable for police to view Driscoll, and her property, as being intimately involved with the apartment unit and the drug activity apparently occurring there.").

[¶ 13] We agree that *Driscoll* is similar to this case. Like in *Driscoll*, law enforcement did not know exactly who was involved in the drug trafficking organization. Law enforcement had received the name of one individual, Nathe, from an informant, but knew other unidentified individuals were involved. Law enforcement conducted preliminary investigations to confirm where Nathe resided. Law enforcement completed a garbage pull and found objects consistent with drug activity in the garbage verifying a nexus between the evidence of criminal activity sought and the residence to be searched. Law enforcement applied for and obtained a search warrant to search the residence where they believed drug activity was taking place. Under *Driscoll*, because Taylor's bedroom qualifies as part of the residence for which the search warrant was obtained and the bedroom could have reasonably contained the object of their search, drug trafficking evidence, law enforcement did not exceed the scope of the search warrant unless he had a greater expectation of privacy in the bedroom sep-

arate from the rest of the residence. *See id.* at ¶¶ 18, 20.

[¶ 14] In *Gatlin,* this Court explained elements it applies in determining whether an individual has a reasonable expectation of privacy:

> A reasonable expectation of privacy has two elements: 1) the individual must exhibit an actual, subjective expectation of privacy, and 2) that expectation must be one that society recognizes as reasonable.
>
> Several factors that contribute to determining whether a legitimate expectation of privacy exists include: Whether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises.

2014 ND 162, ¶ 5, 851 N.W.2d 178 (citations omitted) (quotation marks omitted) (quoting *Nguyen,* 2013 ND 252, ¶¶ 8–9, 841 N.W.2d 676).

[¶ 15] The record reflects that Taylor would have some sort of possessory interest in the items seized and the place to be searched. The record does not reflect whether Taylor could exclude others from the bedroom or whether he had a key for the bedroom. The district court made no findings, and the record is silent as to what if any steps Taylor took to preserve the bedroom as private. It appears from the district court's memorandum that the bedroom door was not closed, as it stated: "The officers ... looked into the Defendant's bedroom, observing what appeared to be marijuana on top of the refrigerator." The record does not reflect who owned the house or Taylor's status as a renter or a guest. Based on the facts of this case, we are not persuaded that Taylor has shown he had a separate reasonable expectation of privacy in the bedroom above that which applied to the residence covered by the warrant. This is not to say that a person may never have a separate expectation of privacy in a bedroom, because as noted above, "[w]hether there is a reasonable expectation of privacy in a given area must be decided on a case-by-case basis." *Kitchen,* 1997 ND 241, ¶ 12, 572 N.W.2d 106.

[¶ 16] While acknowledging that it is not of precedential authority, Taylor argues *United States v. Greathouse,* 297 F.Supp.2d 1264 (D.Or.2003), should persuade this Court he had a reasonable expectation of privacy in his bedroom. In *Greathouse,* the court determined the defendant had a reasonable expectation of privacy in his separate bedroom of a shared residence. *Id.* at 1274–75. In making this determination, the court applied two factors: 1) whether the individual had taken steps to preserve the area as private; and 2) whether that person's expectation of privacy is reasonable. *Id.* at 1273–74. The court, in *Greathouse,* also examined whether the homeowner and the target of the investigation had control of the entire house and had access to the bedroom claimed by the defendant. *Id.* at 1274.

[¶ 17] The pertinent facts of *Greathouse* were that the kitchen, bathroom, and living areas were occupied in common; the defendant's bedroom door was closed and had a "Do Not Enter" sign posted on it; there was no lock on the door, no number, or separate doorbell; the officers were immediately advised the defendant was a renter; the defendant testified he was the only person in the residence who had access to the room; and it was apparent to the officers there was no familial relation between any of the residents. *Id.* at 1274. Even if we were to adopt the reasoning in *Greathouse,* the facts of this

case would not support a similar conclusion.

[¶ 18] Taylor argues law enforcement violated his reasonable expectation of privacy in his bedroom, by searching his bedroom, because he was not named in the search warrant for the residence. Taylor relies on *United States v. Davis*, 557 F.2d 1239 (8th Cir.1977), arguing that because Nathe was the focus of the investigation, the warrant was limited to areas under Nathe's control.

▬▬▬ [¶ 19] In *Davis*, law enforcement applied for a warrant for what appeared to be a single family dwelling naming Davis as the subject of the investigation. *Id.* at 1247–48. When executing the search warrant, officers discovered there were two separate apartments which did not appear to be part of the main house, and did not search those areas. *Id.* at 1248. Davis used and occupied the entire residence. *Id.* The facts of this case are clearly distinguishable from *Davis*, as bedrooms do not necessarily invoke the same privacy rights as a separate residence. In addition, as noted in *Davis*, "search warrants for a street address which later turns out to include separate residences or apartments have been upheld when officers have reason to believe it is only a single family dwelling under the control of one person." *Id.* Again, we are not persuaded. As we have held:

> There is no constitutional requirement that a search warrant name the person who owns or occupies the described premises. The specificity required by the Fourth Amendment is *not as to the person against whom the evidence is to be used, but rather as to the place to be searched and the thing to be seized.* Indeed, probable cause might well be established to suspect that illegal activity, evidence thereof or contraband, was

at a given location without implicating any particular person.

*State v. Frohlich*, 506 N.W.2d 729, 732 (N.D.1993) (emphasis added) (quotation marks omitted). As a result, law enforcement did not have to name Taylor in the search warrant in order to search his bedroom. Law enforcement suspected drug activity was taking place at the residence in which Taylor's bedroom was located. The affidavit in support of the search warrant provides that law enforcement was informed "Nathe and his unknown counterparts are distributing" various drugs. Law enforcement discovered through its investigation that Nathe lived at a certain residence. Law enforcement found evidence of marijuana residue in a garbage pull conducted from the residence, providing the nexus between the criminal conduct and the place to be searched. *See State v. Damron*, 1998 ND 71, ¶ 20, 575 N.W.2d 912 (stating in order to search a residence there must be a nexus between the residence to be searched and the evidence sought). Accordingly, the address of Nathe's residence was included in the search warrant. In *Driscoll*, the Court explained the general area subject to a lawful search:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

2005 ND 105, ¶ 16, 697 N.W.2d 351; *see also Erickson*, 496 N.W.2d at 560 ("A search conducted pursuant to a search warrant may extend to the entire area covered by the warrant's description.").

[¶ 20] Consistent with our previous case law, the search warrant extended to Taylor's bedroom because it was located within the residence described in the search warrant. As a result, we conclude Taylor's reasonable expectation of privacy in his bedroom was not violated, because a search warrant was obtained for the residence where his bedroom is located.

### III

[¶ 21] We reverse the district court's order granting Taylor's motion to suppress evidence found inside his bedroom and remand for further action consistent with this opinion.

[¶ 22] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.