2009 ND 146

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Donald BEANE, Defendant and Appellee.**

Nos. 20090011, 20090015.

Supreme Court of North Dakota.

July 21, 2009.

Nathan Kirke Madden, Assistant State's Attorney, Williams County State's Attorney Office, Williston, N.D., for plaintiff and appellant.

Donald Beane, defendant and appellee; no appearance.

SANDSTROM, Justice.

[¶ 1] The State appeals from a district court order granting in part Donald Beane's motion to suppress evidence found during two searches that led to charges of possession of a controlled substance and possession of drug paraphernalia. Because we conclude the law enforcement officers' actions in this case did not violate Beane's Fourth Amendment rights, we reverse the challenged part of the court's order.

I

[¶ 2] During summer 2007, two Williston parole and probation officers, Darin Cote and Lloyd Haagenson, learned that there were parole violation and aggravated assault warrants for the arrest of Tanner Wold, who was believed to have recently moved from Bismarck to the Williston area. On August 29, 2007, Haagenson received a phone call from Wold's former girlfriend, who told him that she had seen Wold "driving around" with Beane in Williston. Later that day Cote and Haagenson located Beane and his vehicle in the parking lot of a local business. Beane told the officers that he had dropped Wold off a couple of blocks away. The officers looked for Wold in the area where Beane had said he dropped him off, but the officers could not find Wold.

[¶ 3] On September 3, 2007, Cote and Haagenson received an anonymous tip that Wold was at Beane's residence. The officers went there, and Cote described what occurred:

[W]e parked off the property, walked on to the property, walked up to the door of Mr. Beane's place. Right when I was just getting ready to knock at the door, I was up in front of the door. Lloyd was down on the side of the house next to a—I think it was a vehicle parked—I can't remember if it was a pick-up or a car parked there.

Right before I knocked, Mr. Beane then walked out from the garage which is not connected to the residence. I identified him as Donald Beane from earlier, dealing with him a couple days before that. Informed Mr. Beane who we were. We had showed him our badges that were displayed openly around our neck. We have necklaces with badges on it. He knew who we were. Asked him if Tanner Wold was at the residence. He said he didn't even know who we were talking about. I then informed him that we had talked to him just a couple days ago, and he had told us that he had dropped ... Mr. Wold off.

At that time I noticed that Mr. Beane had a pocket knife in his right front pocket by a clip display that holds it onto your pocket. I then told him to show me his hands, 'cause his hands were in the vicinity of his front right pocket. He didn't comply. I let P.O. Haagenson know 'cause it was blind to him, being on the other side of him to

the left of Mr. Beane, that he had a knife.

I again asked him to show me his hands. He took an aggressive step backwards, put his hand towards his pocket. Then he was pushed up against the vehicle, again told to take his hand out of his pocket, which was in his pocket at this time, his right hand being his right front pocket. Ah, he failed to do— comply with our request. He was assisted to the ground by P.O. Haagenson and I. After a slight struggle with him for approximately 30 seconds, he was handcuffed, detained. The knife was then taken. A Terry pat was done then to determine if he had any other weapons. We asked him; he said no, he didn't. Then we did the Terry pat.

While doing the Terry pat there were some other objects found. In one of the pockets there was a—a—he wouldn't tell us what it was in his pocket, it [sic] could feel a bulge. Wouldn't tell us what it was; took it out. It was a blue container with hinges on it. Opened it up to see if there was any kind of weapons in it. Realized then it was a scale, had residue on it.

[¶ 4] Beane was arrested and charged with class C felony possession of drug paraphernalia and class C felony possession of a controlled substance. Three weeks after Beane was released on bond, Beane's home was searched under the authority of a condition of the bond, and contraband was discovered. This resulted in three additional charges of class C felony possession of drug paraphernalia, class A misdemeanor possession of drug paraphernalia relating to methamphetamine, and class A misdemeanor possession of drug paraphernalia relating to marijuana.

[¶ 5] With the assistance of an attorney, Beane moved to suppress the evidence discovered during the two searches on the ground that the searches were unreasonable under the Fourth Amendment. *See* U.S. Const. amend. IV. Following an evidentiary hearing, the district court did not find that the officers' testimony lacked credibility. Rather, the court ruled Beane's actions did not invite "his take-down and removal of the folding knife from his pocket," and even if they did, "once Beane was handcuffed, the danger was over and additional search was not justified." Concluding "the officers were over-reaching based on search not justified by officer safety or reasonable suspicion," the court suppressed the evidence found in the container in Beane's pocket. However, the court did not suppress the evidence found during the second search. The court concluded the evidence was discovered during a search "based upon a lawful bond condition" and was not "fruit of the poisonous tree." The State appealed the part of the court's order suppressing the evidence found in the container in Beane's pocket.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The State's appeal was timely under N.D.R.App.P. 4(b). Although the prosecutor's statement accompanying the notice of appeal merely parrots the language of N.D.C.C. § 29–28–07(5), we conclude the appeal is properly before us because a "review of the facts clearly demonstrates the relevance of the evidence suppressed." *State v. Gay*, 2008 ND 84, ¶ 10, 748 N.W.2d 408. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–07.

II

[¶ 7] The State argues the district court erred in suppressing the contraband found in the container in Beane's pocket.

[¶ 8] In reviewing a district court's decision on a motion to suppress

evidence, we affirm the decision if "there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994). We resolve conflicts in testimony in favor of affirmance because the district court is in a superior position to assess the credibility of witnesses and to weigh the evidence. *State v. Tollefson*, 2003 ND 73, ¶ 9, 660 N.W.2d 575. "Questions of law, such as the ultimate conclusion of whether the facts support a reasonable and articulable suspicion, are fully reviewable on appeal." *State v. Parizek*, 2004 ND 78, ¶ 7, 678 N.W.2d 154.

[¶ 9] In *State v. Harlan*, 2008 ND 220, ¶ 6, 758 N.W.2d 706, we explained:

The Fourth Amendment of the United States Constitution and Article 1, § 8, of the North Dakota Constitution protect individuals from unreasonable governmental searches and seizures. *State v. Gregg*, 2000 ND 154, ¶ 22, 615 N.W.2d 515. A law enforcement officer may conduct a frisk or a pat-down search of a person only when the officer has a reasonable and articulable suspicion that the individual is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A pat-down search is justified only for the protection of the police officer or others nearby. *Id.* at 29, 88 S.Ct. 1868. There is no requirement that the officer know with certainty that the individual is armed, but a reasonably prudent person under the circumstances must be warranted in the belief that his or her safety or that of others is endangered. *Id.* at 27, 88 S.Ct. 1868. The scope of a constitutionally valid pat-down search is limited to the patting of a suspect's outer clothing for such concealed objects that might be used as weapons. *Id.* at 30, 88 S.Ct. 1868. A pocket search is justified

when the patting "reveals the presence of an object of a size and density that reasonably suggests the object might be a weapon." *State v. Heitzmann*, 2001 ND 136, ¶ 13, 632 N.W.2d 1 (citing *State v. Zearley*, 468 N.W.2d 391, 392 (N.D. 1991)). Thus, the police officer must have an articulable and reasonable suspicion that the person is armed and dangerous. *Id.* (citing *State v. Zearley*, 444 N.W.2d 353, 359 (N.D.1989)).

[¶ 10] The officers' entry onto Beane's property to ask him whether Wold was staying there did not violate Beane's Fourth Amendment rights. This Court has observed that "police with legitimate business may enter certain areas surrounding a home where persons may have a reasonable expectation of privacy, such as curtilage, but which are 'impliedly open to use by the public.'" *State v. Winkler*, 552 N.W.2d 347, 352 (N.D.1996) (internal citation omitted). Consequently, the Fourth Amendment "is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises." *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir.2006). "Officers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may." *Estate of Smith v. Marasco*, 318 F.3d 497, 519 (3d Cir.2003). *See also State v. Jenkins*, 143 Idaho 918, 155 P.3d 1157, 1160 (2007) (noting "police with legitimate business, like other citizens, are entitled to enter areas of curtilage impliedly open to public use, such as sidewalks, driveways, and pathways to an entry"); 1 W. LaFave, *Search and Seizure* § 2.3(f), at 600–02 (4th ed.2004) (footnotes omitted) (Fourth Amendment does not cover situations "when the police come on to private property to conduct an investigation or for some other legitimate pur-

pose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches)"); 1 W. Ringel, *Searches & Seizures, Arrests and Confessions* § 8:17, at 8–46 (2d ed.2009) (footnote omitted) ("Officers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may, without probable cause, a warrant, or exigent circumstances"); *cf. State v. DeCoteau*, 1999 ND 77, ¶ 19, 592 N.W.2d 579 ("It is not a Fourth Amendment seizure for a police officer to approach and talk with a person in a public place"). The officers' "small departure" from the front door of the residence to meet Beane coming from the unattached garage also did not trigger the protections of the Fourth Amendment. *Taylor*, 458 F.3d at 1204–05 (Fourth Amendment not triggered "to the extent that the officers moved away from the front door and toward Taylor when they heard him and his dog approaching" from the barn).

[¶ 11] Although Beane testified he asked the officers to leave his property, Cote testified to the contrary, and the district court made no finding on the issue. Instead, the court found "Beane was not responsive and was evasive" when the officers· asked about Wold. Regardless of whether the officers had a reasonable and articulable suspicion that Beane was hindering law enforcement in violation of N.D.C.C. § 12.1–08–03, the court found, by then, the officers "noticed that Beane had a knife in a sheath which was visible in his pocket" and the officers "thought Beane made some action (stepping back) which they interpreted as a first step toward taking out his folding knife." Having seen the knife and Beane's furtive gestures, the officers certainly had a reasonable and articulable suspicion that Beane was armed and possibly dangerous.

[¶ 12] In *State v. Heitzmann*, 2001 ND 136, ¶ 18, 632 N.W.2d 1 (internal citations omitted), this Court said:

The right to make an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, and the test of reasonableness under the Fourth [A]mendment requires careful attention to the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting the seizure or attempting to evade the seizure by flight. Officers are entitled to use the forcible means reasonably necessary to effectuate the detentive goals of investigation, maintenance of the status quo, or officer safety.

Contrary to the district court's ruling that Beane's actions did not "invite[ ] his takedown and removal of the folding knife from his pocket," we conclude the officer's actions of taking Beane to the ground, removing the knife, and handcuffing him were reasonably necessary for the detentive goal of officer safety.

[¶ 13] The district court further ruled, "once Beane was handcuffed, the danger was over and additional search was not justified." We have found no authority to support this proposition under the present circumstances. In *Gay*, 2008 ND 84, ¶¶ 13, 18, 748 N.W.2d 408, a majority of this Court implicitly ruled that placing a suspect in handcuffs before conducting a pat-down search for weapons is constitutionally permissible when the action is based on officer safety. Other courts agree. *See, e.g., People v. Brown*, 169 Cal.App.3d 159, 215 Cal.Rptr. 101, 105–06 (1985) ("the physical restraint and handcuffing represent reasonable force designed to maintain the status quo while

[officer] completed the pat-down and obtained more information"); *State v. Marquez,* 163 P.3d 687, 690 (Utah Ct.App.2007) ("for purposes of officer safety, it is reasonable for officers to frisk handcuffed" suspects). The officers in this case were not required to remove Beane's handcuffs and place themselves in possible danger before frisking Beane for additional weapons. We conclude the officers' handcuffing of Beane before the pat-down search was constitutionally permissible under the circumstances.

[¶ 14] The district court did not analyze the remaining circumstances which led to the discovery of the contraband. It is undisputed, however, that Cote felt a "bulge" in Beane's pocket and Beane "[w]ouldn't tell us what it was." In his affidavit of probable cause, Cote said he "believed that the object could be another weapon, possibly a knife sheath." "[W]hen an outside clothing pat-down search reveals the presence of an object of a size and density that reasonably suggests the object might be a weapon, the searching officer is entitled to continue the search to the inner garments where the object is located in order to determine whether the object is in fact a weapon." *Heitzmann,* 2001 ND 136, ¶ 13, 632 N.W.2d 1. The officers had already taken one "six and three-quarter inch knife" from Beane. We conclude it was reasonable under the circumstances for the officers to believe the "bulge" in Beane's pocket may have been another weapon.

[¶ 15] The "bulge" in Beane's pocket was "a blue container with hinges on it." In *Parizek,* 2004 ND 78, ¶ 21, 678 N.W.2d 154, this Court said, "Generally, where an object recovered from a suspect during a pat down search is a closed container, the officer may not open the container to examine its contents unless the officer can point to specific and articulable facts supporting a reasonable suspicion that the closed container poses a danger to the officer or others nearby." This was not a typical frisk or pat-down search for weapons. Rather, this involved a pat-down search for *additional* weapons. The officers knew Beane was armed, and on the basis of his movements that made the officers believe he might take the knife from his pocket and attack them, the officers could reasonably believe Beane was dangerous. Both officers testified they were concerned for their safety during the incident. The officers had already taken one knife from Beane; the container was large enough to hold a scale, and therefore another weapon; and Beane would not tell them what was inside of the container. Cote testified he opened the container "to see if there was any kind of weapons in it."

[¶ 16] Courts have upheld the constitutional validity of container searches under unusual circumstances like these. *See, e.g., Vaughan v. State,* 279 Ga.App. 485, 631 S.E.2d 497, 499–500 (2006) (where officers knew defendant had machete and two pocket knives on his person and defendant was nervous, "it was reasonable [for the officers] to conclude that Vaughan might have another knife, despite his assurances that he did not, and that one could be in the tin"); *Phillips v. Commonwealth,* 17 Va.App. 27, 434 S.E.2d 918, 921 (1993) (where officer learned suspect was violent, "it was reasonable for [officer] to search inside the pouch to determine whether it contained a weapon that could have been used to harm him"); *State v. Miller,* 91 Wash.App. 181, 955 P.2d 810, 812–13, *opinion amended,* 961 P.2d 973 (Wash.Ct.App. 1998) (where officer during frisk found knife on defendant's waist causing officer to "fear for his safety," the officer "did not exceed the proper scope of a *Terry* stop when he opened the canister to check for a weapon"). It could be argued that any

threat of harm to the officers no longer existed after Cote removed the container from Beane's pocket and therefore there was no justification for Cote to open the container and look for additional weapons. The court rejected a similar argument in *Phillips*, 434 S.E.2d at 921 (internal citations omitted):

> If an officer seizes an object during a pat-down search because he believes it could be a weapon, but then, upon removal, discovers that it is neither a weapon nor evidence giving probable cause for an arrest, the officer must return the object to the suspect once the *Terry* stop is terminated. It would defeat the purpose of a protective pat-down search to require a police officer, who seizes a closed container during a pat-down search on the reasonable suspicion that it contained a weapon, to return the container unexamined simply because it is neither a weapon nor evidence of a crime. "Police officers need not risk a shot in the back by returning containers which they reasonably suspect contain a dangerous weapon but may lack probable cause to seize."

Under the circumstances, we conclude it was reasonable for Cote to open the container to determine whether Beane was carrying any other weapons, and Cote's actions did not violate Beane's constitutional rights.

[¶ 17] We conclude the district court's decision is contrary to the manifest weight of the evidence. The contraband discovered on Beane was the fruit of a legal frisk or pat-down search. The court erred in partially granting Beane's motion to suppress evidence.

### III

[¶ 18] The part of the district court's order suppressing the evidence found in the container in Beane's pocket is reversed.

[¶ 19] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.