2014 ND 162

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Luke Adam GATLIN, Defendant and Appellant.**

No. 20140083.

Supreme Court of North Dakota.

July 31, 2014.

Meredith H. Larson, Assistant State's Attorney, Grand Forks, ND, for plaintiff and appellee; submitted on brief.

Jessica J. Ahrendt, Grand Forks Public Defender Office, Grand Forks, ND, for defendant and appellant; submitted on brief.

KAPSNER, Justice.

[¶ 1] Luke Adam Gatlin appeals from a criminal judgment entered following a conditional plea of guilty to possession of drug paraphernalia. Because we hold Gatlin cannot assert a violation of a third party's expectation of privacy in the home searched by police and because Gatlin failed to object to the search, we affirm the district court judgment.

I

[¶ 2] Police served an arrest warrant on Michael Sebjornson at a Grand Forks residential address. An officer knocked on the door, and Ione Sebjornson answered. The officer asked Ione Sebjornson if Michael Sebjornson was there, and Ione Sebjornson responded that he was not. The officer asked Ione Sebjornson if he could search the home, and she said "no." The officer then asked Danny Sebjornson, who was standing in the doorway, if he lived at the address. Danny Sebjornson responded that he did. The officer asked Danny Sebjornson if Michael Sebjornson was in the home, and Danny Sebjornson responded "Yes. Come get him. . . . Go get him. He's in the room." The officer then followed Danny Sebjornson into the home. While inside, the officer found Luke Gatlin hiding in a closet, and a warrants check revealed that Gatlin had an active warrant.

Gatlin was arrested on the warrant, and when he was booked into the correctional center, a meth pipe was found in his pocket, so he was also charged with possession of drug paraphernalia.

[¶ 3] Gatlin moved to suppress the evidence obtained from the search, arguing the search violated the Fourth and Fourteenth Amendments of the United States Constitution and the North Dakota Constitution. The district court denied Gatlin's motion to suppress, finding Gatlin did not have standing to challenge the search and Gatlin forfeited his right to seek suppression by failing to object during the search. Gatlin conditionally pled guilty, preserving the suppression issue for appeal.

II

[¶ 4] On appeal, Gatlin argues he had standing to bring a motion to suppress evidence and did not lose out on this right by not objecting to the search at the time it occurred. Gatlin also argues the search violated his constitutional rights because officers executed the search over the homeowner's objection. Finally, Gatlin argues that even if officers had the authority to search common areas, their search of the room in which Gatlin was found was outside the scope of that authority. When reviewing a district court's decision on a motion to suppress:

We will defer to a trial court's findings of fact in the disposition of a motion to suppress. Conflicts in testimony will be resolved in favor of affirmance, as we recognize the trial court is in a superior position to assess credibility of witnesses and weigh the evidence. Generally, a trial court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the trial court's findings, and

if its decision is not contrary to the manifest weight of the evidence. . *State v. Genre,* 2006 ND 77, ¶ 12, 712 N.W.2d 624 (citation omitted). "Questions of law are reviewed under the de novo standard of review." *Id.* (citation omitted).

[¶ 5] The district court denied the motion to suppress based on a lack of standing. Courts no longer analyze Fourth Amendment claims under the traditional "standing" doctrine, although "the term continues to be used to refer to the concept of 'reasonable expectation of privacy.' " *State v. Oien,* 2006 ND 138, ¶ 8, 717 N.W.2d 593 (citation omitted). An individual's capacity to challenge a search or seizure depends on "whether 'the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.' " *Id.* (quoting *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). In those interests, an individual is said to have "a reasonable expectation of privacy." *See id.* A reasonable expectation of privacy has two elements: 1) the individual must exhibit an actual, subjective expectation of privacy, and 2) that expectation must be one that society recognizes as reasonable. *State v. Nguyen,* 2013 ND 252, ¶ 8, 841 N.W.2d 676.

> Several factors that contribute to determining whether a legitimate expectation of privacy exists include: "[W]hether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises."

*Id.* at ¶ 9 (citation omitted). This Court has recognized that overnight guests have Fourth Amendment protection in the home of a third party and has extended that protection to non-overnight guests. *See*

*State v. Hayes,* 2012 ND 9, ¶ 15, 809 N.W.2d 309; *see also Minnesota v. Olson,* 495 U.S. 91, 96–97, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *State v. Ackerman,* 499 N.W.2d 882, 885 (N.D.1993). The individual challenging the search has the burden of proving a reasonable expectation of privacy existed. *Nguyen,* at ¶ 9.

[¶ 6] In this case, the district court found Gatlin did not have standing to challenge the search:

> [W]hile a guest may have standing to suppress evidence from a search, a defendant who is present during a search but fails to object "loses out" on his opportunity to seek the suppression of evidence gathered as a result of that search. [*State v.] Hurt,* 2007 ND 192, ¶ 11, 743 N.W.2d 102. A defendant who is present but fails to object to the search may not bring a claim based on the Constitutional violations of another alleged victim. [*United States v. Padilla,* 508 U.S. 77, 81, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993) ]. *See Georgia v. Randolph,* 547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) ("[A] warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident").

In the case at bar, this Court finds that Defendant's Fourth Amendment rights were not violated and thus, Defendant does not have standing to challenge the search. As the North Dakota Supreme Court stated in *Hurt,* a defendant who is present and fails to object during a search loses their opportunity to seek the suppression of evidence. *Hurt,* 2007 ND 192, ¶ 11, 743 N.W.2d 102. Here, the Defendant was present during the search and failed to object, thereby extinguishing any opportunity

182

to seek suppression. While it is true Ione Sebjornson objected to the search, the Defendant may not seek to suppress evidence through the alleged violation of another victim's rights. *See Padilla*[,] 508 U.S. at 81 [113 S.Ct. 1936.]

[¶ 7] The district court's reliance on *Hurt* and *Padilla* indicates the district court assumed Gatlin was asserting a privacy interest as a guest. In *Hurt*, this Court noted that "[a] co-occupant who is not present at the door and does not flatly refuse the search at the time his fellow occupant provides consent 'loses out' on his opportunity to exclude evidence gathered in a common area co-occupant consent search." 2007 ND 192, ¶ 11, 743 N.W.2d 102 (citation omitted). This statement was not an analysis of the individual's reasonable expectation of privacy; rather, it pertains to the substantive limits of the consent exception to the warrant requirement. *See id.* at ¶¶ 5–11. In *Padilla*, the United States Supreme Court determined that co-conspirators get no special treatment in the determination of whether a reasonable expectation of privacy exists; they must have their own subjective expectation of privacy and cannot rely on that of their co-conspirators. 508 U.S. at 81, 113 S.Ct. 1936.

[¶ 8] Gatlin is asserting his own expectation of privacy based on his status as a guest in the searched home. Whether Gatlin had a reasonable expectation of privacy would be analyzed under the standards expounded in *Oien* and *Nguyen*. Gatlin offered no evidence at the suppression hearing, and there is nothing on the record to support his claim that he was a guest in the home. Assuming, without deciding, Gatlin was a guest in the home, we analyze Gatlin's arguments that the consent exception to the search warrant did not apply.

[¶ 9] Gatlin argues the search was unreasonable as to him, because the police executed the search over Ione Sebjornson's express refusal to consent. "Consent is one exception to the warrant requirement." *Genre*, 2006 ND 77, ¶ 17, 712 N.W.2d 624 (citation omitted). "The scope of consent is measured objectively by what a reasonable person would have understood by the exchange between the police and the [consenting individual]." *State v. Uran*, 2008 ND 223, ¶ 7, 758 N.W.2d 727 (citations omitted). If one co-occupant objects, the objecting occupant's refusal prevails over the consent of his co-occupant rendering the search unreasonable and invalid as to the objecting occupant. *Hurt*, 2007 ND 192, ¶ 11, 743 N.W.2d 102. However, in *Hurt*, we noted the *Randolph* court "explained the co-occupant who is not present at the door and does not flatly refuse the search at the time his fellow occupant provides consent 'loses out' on his opportunity to exclude evidence gathered in a common area co-occupant consent search." *Id.* at ¶ 11 (citing *Randolph*, 547 U.S. at 121, 126 S.Ct. 1515). Gatlin may not assert Ione Sebjornson's refusal to give consent as the basis for a warrant violation if other evidence indicates the officers reasonably relied on the consent of another co-occupant.

[¶ 10] Consent may be given by an individual with actual or apparent authority. *State v. Zimmerman*, 529 N.W.2d 171, 175 (N.D.1995). Authority to consent to a search may be exclusive to one individual, or two or more people may have common authority. *State v. Swenningson*, 297 N.W.2d 405, 407 (N.D.1980). Danny Sebjornson told the police officer he lived at the address where police were attempting to serve the warrant and told them to enter. The officer followed Danny Sebjornson into the home. While Ione Sebjornson objected to the search, Danny

Sebjornson consented. The district court correctly held that Gatlin's failure to object left him without recourse to object to evidence produced by a valid search under the consent objection. *Hurt*, 2007 ND 192, ¶ 11, 743 N.W.2d 102.

[¶ 11] Gatlin argues if the officer's initial entry was valid based on Danny Sebjornson's consent, the search exceeded the scope of that consent when officers entered areas which were not common areas. A co-occupant's consent to search extends only to the areas over which that co-occupant has common authority. *See Hurt*, 2007 ND 192, ¶ 7, 743 N.W.2d 102. Apparent authority exists where a person of reasonable caution would believe, based on the facts available to the officer at the time of consent, that the consenting party had authority over the place or thing to be searched. *State v. Fischer*, 2008 ND 32, ¶ 12, 744 N.W.2d 760.

[¶ 12] The officer testified at the suppression hearing about who led to the discovery of Gatlin:

A I turned around, and at that point Danny was walking out of the kitchen area, back through the dining room area, towards the living room. And I followed him at that point, and he walked into the room off to the right. As I had stated, that when you walk from the main door of the house, I guess it's on the west side of the living room. He walked into that room, stood approximately in the center of the room, and turned and looked around the doorway into the closet area, and then looked at me, and looked again at the closet area of this room.

Q What did—what was your impression of what he was doing at that time?

A He was indicating that somebody was there. I believed it was Michael that was there.

Q So what did you do?

A I entered the room, and I peaked around the doorway—there was a door—and saw a male pushed up against the corner of the closet. There was clothes hanging on the rack area, and then there's a stack of electronic items in the—in the corner of the closet, and he was sitting on top of those electronic items, kind of pushed back in the corner of the closet by the clothes that were hanging there on the rod.

Q Did it appear that he was hiding?

A Yes, ma'am, it was clear to me that he was hiding.

There was no testimony about the owner or occupant of the room. Gatlin did not testify and did not establish that he had any authority over the room. Based on the officer's description of Danny Sebjornson walking right into the room, it was reasonable for the officer to believe Danny Sebjornson had apparent authority over that room.

### III

[¶ 13] We affirm the district court judgment.

[¶ 14]  GERALD W. VANDEWALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.