FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
JANUARY 20, 2023
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 8

State of North Dakota,                                        Plaintiff and Appellant

     v.

Shawnee Lynn Krall,                                          Defendant and Appellee

### No. 20220112

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Stacy J. Louser, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Justice.

Leah J. Viste, Assistant State's Attorney, Fargo, ND, for plaintiff and appellant.

Nicholas D. Thornton (argued), Fargo, ND, and Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellee.

**VandeWalle, Justice.**

[¶1]   The State appealed from a district court order granting a motion to suppress evidence in a case against Shawnee Krall. We conclude the district court's findings are supported by sufficient competent evidence. We also conclude the inventory-search exception and the inevitable-discovery doctrine do not apply to provide an exception to the exclusionary rule. The district court did not err in granting Krall's motion to suppress. We affirm.

I

[¶2]   The State charged Krall with murder and gross sexual imposition. Krall entered a plea of not guilty.

[¶3]   Krall moved to suppress evidence, arguing his Fourth Amendment rights were violated when officers from the Minot Police Department committed an illegal search of his motor vehicle, a Ford 500. Krall alleged he had a reasonable expectation of privacy in the vehicle, the officers did not obtain a search warrant or his consent to search the vehicle, other individuals did not have authority to consent to the search, and no exceptions to the warrant requirement existed to validate the warrantless search.

[¶4]   The State opposed Krall's motion to suppress. The State alleged Krall's roommate, Jane Doe, was reported missing; officers contacted Zachary Barnett while searching for Jane Doe; Barnett indicated Krall left a vehicle on Barnett's property; and Barnett indicated he no longer wanted the vehicle on his property. The State further alleged officers attempted to determine ownership of the vehicle but it was not registered to Krall and the individual it was registered to indicated it had been sold. The State claimed officers arranged to tow the vehicle because Barnett requested it be removed from the property, the officers conducted an inventory search before the vehicle was loaded onto the tow truck, and they found a human body in the vehicle's trunk. The State argued Krall did not possess a reasonable expectation of privacy in the vehicle; Krall did not have standing to contest any alleged trespass on the

1

Barnett property; and multiple exceptions to the warrant requirement applied, including that the evidence was found during an inventory search, that the automobile exception applied, that there were exigent circumstances, and that the inevitable-discovery doctrine applied.

[¶5] After a hearing, the district court granted Krall's motion and suppressed all of the evidence obtained in the search of the Ford 500. To summarize, the court found a plain view search of the vehicle was conducted and nothing of interest was found, Krall's probation officer denied a request from police officers to search the vehicle, the probation officer also denied the officers' request to tow and impound the vehicle, and the state's attorney's office advised officers there was not enough evidence to get a search warrant for the vehicle. The court also found Krall had a reasonable expectation of privacy in the vehicle, he did not consent to the search, one of the officers used a "slim jim" to gain access into the vehicle, a search warrant had not been issued at the time officers entered the vehicle, and Jane Doe's body was discovered in the trunk of the vehicle. The district court concluded none of the State's asserted exceptions to the warrant requirement applied, including the exceptions for exigent circumstances, inventory search, and inevitable discovery.

II

[¶6] Krall argues this Court does not have jurisdiction to hear the appeal. He contends the State did not comply with statutory requirements for appealing from an order granting a motion to suppress evidence.

[¶7] Under N.D.C.C. § 29-28-07(5), the State may appeal from an order suppressing evidence "when accompanied by a statement of the prosecuting attorney asserting that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding. The statement must be filed with the notice of appeal."

[¶8] The State's notice of appeal states, "This appeal is not taken for purpose of delay and the evidence is a substantial proof of a fact material in the proceeding." The statement from the State's notice of appeal merely recites the

2

statutory language. We have said the State should do more than "parrot[ ] the language of N.D.C.C. § 29-28-07(5)." *State v. Cook*, 2020 ND 69, ¶ 9, 940 N.W.2d 605 (quoting *State v. Beane*, 2009 ND 146, ¶ 6, 770 N.W.2d 283). However, in other cases in which the State merely recited the statutory language we have concluded the appeal was properly before us when it was clear the suppressed evidence was substantial proof of a fact material in the proceeding because the district court's order suppressed all of the State's evidence on elements of the crimes charged. *See Cook*, at ¶ 9.

[¶9] Here, Krall argues the appeal should not proceed because the State indicated to the district court that it had other evidence on the murder charge and it would proceed with the prosecution without the suppressed evidence. The court suppressed all of the evidence found during the search of the Ford 500, including the body of the deceased. Even if there is other evidence from which the prosecution of the murder charge could proceed, Krall was also charged with gross sexual imposition. The State's motion to amend the complaint to include the charge of gross sexual imposition states, "The State had not filed the charge of Gross Sexual Imposition until now because it was awaiting the results of the victim's autopsy report and laboratory analysis. Based upon these results and the opinion of the medical examiner, the State believes the addition of this charge is appropriate." The suppressed evidence was substantial proof of a fact material in the proceeding for the gross sexual imposition charge. We conclude the appeal is properly before us.

III

[¶10] The State argues the district court erred in granting Krall's motion to suppress. It claims the court's findings about the inventory search are not supported by sufficient competent evidence. The State also asserts the doctrine of inevitable discovery applies and provides an exception to the exclusionary rule.

[¶11] In reviewing the district court's decision on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. *State v. Mayland*, 2022 ND 9, ¶ 6, 969 N.W.2d 159. We will affirm the decision on a motion to suppress on appeal if there is "sufficient

competent evidence fairly capable of supporting the [district] court's findings, and the decision is not contrary to the manifest weight of the evidence." *Id.* (quoting *State v. Pouliot*, 2020 ND 144, ¶ 6, 945 N.W.2d 246). Our standard of review reflects the importance of the district court's opportunity to observe witnesses and assess their credibility. *State v. Cochran*, 2021 ND 141, ¶ 8, 963 N.W.2d 238. Questions of law are fully reviewable. *Mayland*, at ¶ 6. Whether a finding of fact meets a legal standard is a question of law. *Cochran*, at ¶ 8.

[¶12] People are protected from unreasonable searches and seizures under the United States and North Dakota constitutions. *See* U.S. Const. amend. IV; N.D. Const. art. I, § 8. "When an individual reasonably expects privacy in an area, the government, under the Fourth Amendment, must obtain a search warrant unless the intrusion falls within a recognized exception to the warrant requirement." *State v. Gregg*, 2000 ND 154, ¶ 23, 615 N.W.2d 515. "[E]vidence seized from a warrantless search, when no recognized exception to the warrant requirement exists, must be suppressed under the exclusionary rule." *State v. Friesz*, 2017 ND 177, ¶ 15, 898 N.W.2d 688 (quoting *State v. Hart*, 2014 ND 4, ¶ 13, 841 N.W.2d 735).

## A

[¶13] A valid inventory search is one exception to the warrant requirement. *State v. Ressler*, 2005 ND 140, ¶ 23, 701 N.W.2d 915. We have explained:

> Under the inventory search exception, "police need neither probable cause nor a warrant to search a vehicle." *State v. Holmes*, 569 N.W.2d 181, 186 (Minn. 1997) (citing *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983)). In other words, the basis for an inventory search does not arise because the police suspect the vehicle contains contraband or evidence of crime. Rather, the basis for an inventory search rests on the administrative and caretaking functions which we identified in *[State v.] Kunkel*, 455 N.W.2d [208,] 211 [(N.D. 1990)] (citing *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)). The Fourth Amendment examination of an inventory search, therefore, turns not on the issue of probable cause, which is the traditional basis for the warrantless search of vehicles, but on the issues of whether the vehicle was properly impounded and the search was carried out in accordance with standard police

4

procedures. *Holmes*, 569 N.W.2d at 187; *see also State v. Goff*, 272 S.E.2d 457, 459 (W. Va. 1980) (discussing the difference between inventory searches and the "automobile exception").

*State v. Syvertson*, 1999 ND 137, ¶ 23, 597 N.W.2d 644 (quoting *State v. Garrett*, 1998 ND 173, ¶ 18 n.3, 584 N.W.2d 502). When an inventory search is conducted in good faith for administrative and caretaking purposes it is permissible under the Fourth Amendment. *Ressler*, at ¶ 23.

[¶14] The district court found the inventory-search exception did not apply. The court noted there was conflicting testimony about when Barnett requested the officers remove the vehicle from the property and about when the search began. The court explained the officers claimed a tow truck was contacted and officers began the inventory search after Barnett requested the vehicle be removed from the property, but Barnett testified he requested officers remove the vehicle after they opened the vehicle and started searching. The court found Barnett's testimony about the officers' entry into the vehicle was consistent and credible. The court further explained its decision, stating:

> Notably, law enforcement only offered to tow the vehicle from Barnett's property after [Krall's probation officer] denied entry into the vehicle as part of a probationary search, after [the probation officer] denied law enforcement's request to tow the vehicle and after the Ward County State's Attorney's [O]ffice informed law enforcement that a search warrant for the vehicle could not be obtained. [One officer] testified he had 'a strong suspicion of what was in there. I would have liked to get in the car.'
>
> Based on these facts, the Court must conclude the motivation behind law enforcement's offer to tow the vehicle was not premised on 'reasonable police regulations relating to inventory proceedings administered in good faith' nor as routine caretaking procedure. Rather, the motivation for offering to tow the vehicle was for investigatory purposes, rendering the warrantless search of the Ford 500 impermissible under the inventory/impound search warrant exception.

The court determined the inventory-search exception did not apply because the officers' motivation for offering to tow the vehicle was for investigatory purposes and was not premised on reasonable police regulations relating to

inventory proceedings administered in good faith or as a routine caretaking procedure.

[¶15] The State argues the district court's findings about the inventory search are not supported by the evidence because other evidence does not support Barnett's testimony that officers opened the vehicle and began searching before he asked them to remove the vehicle from his property. The State claims the officers testified that they told Barnett they were going to leave before they opened the vehicle and that Barnett asked them to remove the vehicle from the property at that time. The State asserts that when the testimony of all of the witnesses is considered it is clear competent evidence does not support the court's finding that Barnett did not ask for the vehicle to be removed until after officers entered the vehicle.

[¶16] Although two officers testified that they did not enter the vehicle until after Barnett asked them to remove it from the property Barnett's testimony was conflicting. Barnett was asked, "[A]t some point in time did you ask that the vehicle be removed?" and he testified:

> That was after they started investigating everything. And by that time I think there was the detective and lieutenant and then I think there was another officer there. But more cop cars started coming up and arriving and whatnot. So there was just cops everywhere and neighbors were coming out. And I asked the detective if we could get the car towed and they said, yeah, not a problem.

Barnett repeatedly testified that he asked the officers to remove the vehicle from the property after they entered the vehicle and began searching.

[¶17] We defer to the district court's assessment of a witness's credibility in reviewing a district court's decision on a motion to suppress. *Cook*, 2020 ND 69, ¶ 13. We decline the State's request to reassess the witnesses' credibility or reweigh the evidence.

[¶18] Moreover, the district court found the inventory search was not premised on reasonable police regulations relating to inventory proceedings

administered in good faith or as a routine caretaking purpose. The court found the officers' motivation for the search was for investigatory purposes. An inventory search is not an exception to the warrant requirement if it is carried out in the midst of a criminal investigation and there is no evidence the police were concerned with protecting or safeguarding either their interests or the owner's property interests. *See Ressler*, 2005 ND 140, ¶ 24.

[¶19] Evidence established the officers' request for a probation search was denied and the State's Attorney's Office informed the officers a search warrant could not be obtained. An officer testified, "I had a strong suspicion of what was in there. I would have liked to get in the car." Evidence supports the district court's finding that the officers opened the vehicle and began searching before Barnett requested it be removed from the property. We conclude there is sufficient competent evidence in the record to support the court's finding that the officers' motivation for offering to tow the vehicle was for investigatory purposes.

[¶20] There is sufficient competent evidence supporting the district court's findings about the inventory search and its decision is not contrary to the manifest weight of the evidence. Therefore, the inventory-search exception to the warrant requirement does not apply.

B

[¶21] The State argues the district court erred in determining the evidence was not admissible under the inevitable-discovery doctrine.

[¶22] "The inevitable-discovery doctrine provides that evidence obtained from information procured in an unlawful search or seizure is admissible under the fruit-of-the-poisonous-tree doctrine if the evidence would inevitably have been discovered without the unlawful conduct." *State v. Stewart*, 2014 ND 165, ¶ 17, 851 N.W.2d 153 (quoting *State v. Smith*, 2005 ND 21, ¶ 31, 691 N.W.2d 203). We have adopted a two-part test to determine when the inevitable-discovery doctrine applies:

First, use of the doctrine is permitted only when the police have not acted in bad faith to accelerate the discovery of the evidence in question. Second, the State must prove that the evidence would have been found without the unlawful activity and must show how the discovery of the evidence would have occurred.

*Stewart*, at ¶ 17 (quoting *State v. Phelps*, 297 N.W.2d 769, 775 (N.D. 1980)).

[¶23] The requirement that the police did not act in bad faith to accelerate the discovery of the evidence is necessary because one of the purposes of the exclusionary rule is to prevent and deter shortcuts in law enforcement. *Friesz*, 2017 ND 177, ¶ 26. We have recognized other courts have held that the inevitable-discovery doctrine does not apply when officers knowingly or intentionally violate the accused's rights and that bad faith means something more than just acting unlawfully. *State v. Holly*, 2013 ND 94, ¶ 57, 833 N.W.2d 15. The State has the burden to prove the absence of bad faith. *Id.* at ¶ 58.

[¶24] The State must also establish that the evidence inevitably would have been discovered through an independent, lawful investigative procedure. *See* 3 Wayne R. LaFave, *Criminal Procedure* § 9.3(e) (4th ed. 2021). "'Inevitably,' for this purpose, means that the discovery definitely would have occurred, not that it 'might' or 'could' have occurred." *Id.*; *see also Smith*, 2005 ND 21, ¶ 31 (stating a showing the discovery might have occurred is inadequate); 1 *McCormick on Evid.* § 181 (8th ed. 2022) (stating courts generally agree the exception requires proof that the prosecution would, not might or could, have obtained the evidence in a proper manner).

[¶25] The district court concluded the inevitable-discovery doctrine did not apply because the State failed to establish either part of the two-part test. The court stated law enforcement acted in bad faith to accelerate the discovery of the evidence. The court also determined the State did not present any evidence to support its claim that Krall's probation officer would have authorized a search of the vehicle upon confirmation of Krall's possessory interest in the vehicle, and the State's claim that the probation officer would have authorized the search was speculation.

[¶26] The State argues that the officers' actions did not show bad faith and that the evidence would have been found without the inventory search. It claims officers would have been granted access to search the vehicle after ownership of the vehicle was determined. The State contends evidence established Krall's probation officer would have authorized a search and the evidence would have been found if the probation officer had been aware Krall owned the vehicle. The State claims Krall was required to inform the probation officer he owned the vehicle and he should not benefit from failing to provide the required information.

[¶27] Although the State argues it established both parts of the two-part test, we conclude the State failed to establish the evidence would have been found without the unlawful activity. Therefore, we do not need to address whether the State established the officers did not act in bad faith to accelerate the discovery of the evidence.

[¶28] The State's argument that the evidence would have been discovered through a probation search is speculation. There was testimony officers requested Krall's probation officer authorize a search of the vehicle before the officers began the search. The probation officer testified she denied the officers' requests to tow and search the vehicle because she did not know anything about the vehicle, including whether it belonged to Krall.

[¶29] Although the State claims Krall had an obligation to report his ownership of the vehicle to his probation officer, the district court found there was no requirement in the ordered conditions of probation that Krall notify his probation officer that he had the vehicle. The probation conditions contained in "Appendix A" required Krall to answer all reasonable inquiries from his probation officer and notify his probation officer of any change in address or employment, but the probation conditions did not explicitly require Krall to notify his probation officer of his vehicle ownership. Although the probation officer could have asked Krall if the vehicle was his and could have potentially authorized a probation search, there was no evidence the probation officer planned or attempted to contact Krall to inquire about his ownership of the vehicle.

9

[¶30] The probation officer testified that she did not approve a probation search of any other vehicles belonging to Krall and that she declined to authorize the search of the Ford 500. The probation officer declined to authorize a search of the vehicle and there is no evidence that decision would have changed if the illegal search had not occurred. Under different facts, a probation search might have been authorized. However, that is speculation. On this record, there was no evidence the probation officer would have authorized a probation search of the Ford 500 if the illegal search had not occurred and the investigation continued.

[¶31] The State failed to show a probation search of the vehicle would have been conducted if the officers had not attempted the illegal search. *See State v. Handtmann*, 437 N.W.2d 830, 838 (N.D. 1989) (holding the inevitable-discovery doctrine did not apply when the State alleged another search would have been conducted pursuant to a hypothetical search warrant based on evidence that had been subsequently discovered). We conclude the State failed to establish the inevitable-discovery exception applies in this case and the district court did not err in granting Krall's motion to suppress.

IV

[¶32] We affirm the order suppressing evidence.

[¶33] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte

10