# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2023 ND 220

State of North Dakota,                                                          Plaintiff and Appellee

  v.

Ashton Emanual Steele,                                                 Defendant and Appellant

### No. 20230064

Appeal from the District Court of Mountrail County, North Central Judicial District, the Honorable Todd L. Cresap, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Bahr, Justice.

Wade G. Enget, State's Attorney, Stanley, ND, for plaintiff and appellee.

Rina Morales-Holmes (argued) and Kyle R. Craig (on brief), Minot, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1]  Ashton Emanual Steele appeals from a criminal judgment entered after he conditionally pleaded guilty to delivery of a controlled substance and possession with intent to manufacture or deliver a controlled substance. The plea reserved the right to appeal the denial of a motion to suppress evidence. We conclude Steele had a reasonable expectation of privacy in the rented bedroom and a reasonable officer would not believe the homeowner could consent to a search of the bedroom. We reverse and remand.

I

[¶2]  The district court's factual findings, made after an evidentiary hearing on Steele's motion to suppress evidence, are summarized as follows. Barbara Lee owns a home in New Town. Police placed the home under surveillance for drug activities. The officers saw Lee and her daughter, Jenna Walker, leave the home and enter a motor vehicle. The officers conducted a traffic stop on the vehicle. During the stop, the officers informed Lee they suspected a drug "plug" was in her home. "Plug" is a term commonly used to refer to a supplier of drugs. After 10 minutes of the officers "haranguing and badgering" Lee, she consented to a search of the home "and told the officers that their suspect was in a back bedroom." Around this time, "[t]he officers further learned from Jenna Walker that she had been paid $150 by Ashton Steele to stay in the home."

[¶3]  The officers entered the home and "proceeded to the back bedroom where Barbara Lee told them they could find Ashton Steele." "The door was closed. Officers opened the door without knocking, without Ashton Steele's consent to entry, and without a warrant." Inside the bedroom they discovered Steele, along with drugs and drug paraphernalia.

[¶4] Denying Steele's motion to suppress evidence, the district court concluded "it was reasonable for the officers to conclude that Barbara Lee knew Ashton Steele was in her home; she knew which bedroom he occupied within the home; and that he had at least her tacit permission to be in the home." The

court held, "Under these facts, and when viewed objectively through the eyes of the officers, the officers could reasonably conclude that Barbara Lee had authority to authorize their entry and search into the back bedroom of her own home." The court then denied the motion to suppress evidence.

[¶5] Steele pleaded conditionally guilty to delivery of a controlled substance and possession with intent to manufacture or deliver a controlled substance. He reserved the right to appeal the order denying the motion to suppress. The district court entered a criminal judgment.

## II

[¶6] The standard of review for a motion to suppress is well established. "In reviewing the district court's decision on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance." *State v. Krall*, 2023 ND 8, ¶ 11, 984 N.W.2d 669. This Court "will affirm the decision on a motion to suppress on appeal if there is 'sufficient competent evidence fairly capable of supporting the [district] court's findings, and the decision is not contrary to the manifest weight of the evidence.'" *Id.* (quoting *State v. Mayland*, 2022 ND 9, ¶ 6, 969 N.W.2d 159). However, "[w]hether law enforcement violated constitutional prohibitions against unreasonable search and seizure is a question of law." *State v. Schmidt*, 2016 ND 187, ¶ 8, 885 N.W.2d 65. The parties do not contest the district court's factual findings. Thus, based on those findings, we determine as a matter of law whether the search and seizure was unreasonable.

[¶7] "The Fourth Amendment of the United States Constitution and Art. I, § 8, of the North Dakota Constitution protect individuals against unreasonable searches and seizures." *State v. Bell*, 2017 ND 157, ¶ 8, 896 N.W.2d 913. "When an individual reasonably expects privacy in an area, the government, under the Fourth Amendment, must obtain a search warrant unless the intrusion falls within a recognized exception to the warrant requirement." *Krall*, 2023 ND 8, ¶ 12 (quoting *State v. Gregg*, 2000 ND 154, ¶ 23, 615 N.W.2d 515). "Evidence discovered during a warrantless search when no exception exists must be suppressed under the exclusionary rule." *State v. Williams*, 2015 ND

103, ¶ 7, 862 N.W.2d 831 (quoting *State v. Kuruc*, 2014 ND 95, ¶ 12, 846 N.W.2d 314).

[¶8] In a motion to suppress, "[a] person alleging a Fourth Amendment violation has an initial burden of establishing a prima facie case of an illegal search or seizure." *City of Jamestown v. Casarez*, 2021 ND 71, ¶ 16, 958 N.W.2d 467 (quoting *Schmidt*, 2016 ND 187, ¶ 8). "However, after the defendant has made a prima facie case, the burden of persuasion is shifted to the State to justify its actions." *State v. Casson*, 2019 ND 216, ¶ 7, 932 N.W.2d 380 (quoting *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 6, 571 N.W.2d 137).

A

[¶9] Steele argues he had a reasonable expectation of privacy in the bedroom.

[¶10] "Whether an individual has a reasonable expectation of privacy in an area is reviewed under the de novo standard of review." *State v. Adams*, 2018 ND 18, ¶ 9, 905 N.W.2d 758. "Whether there is a reasonable expectation of privacy in a given area must be decided on a case-by-case basis." *Id.* (quoting *State v. Kitchen*, 1997 ND 241, ¶ 12, 572 N.W.2d 106). "A reasonable expectation of privacy has two elements: 1) the individual must exhibit an actual, subjective expectation of privacy, and 2) that expectation must be one that society recognizes as reasonable." *State v. Gatlin*, 2014 ND 162, ¶ 5, 851 N.W.2d 178. When considering whether a person has a legitimate expectation of privacy, this Court considers "[w]hether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises." *State v. Nguyen*, 2013 ND 252, ¶ 9, 841 N.W.2d 676 (quoting *United States v. Mendoza*, 281 F.3d 712, 715 (8th Cir. 2002)). No single factor determines whether an individual has a legitimate expectation of privacy. *See State v. Gardner*, 2019 ND 122, ¶ 17, 927 N.W.2d 84.

[¶11] The district court found it was reasonable for the officers to conclude Steele had Lee's tacit permission to be in the home and paid money to stay in the home. When the officers entered the home, the door to the bedroom Steele

3

occupied was closed. Steele's actions demonstrate he excluded people from the bedroom and "exhibit[ed] an actual, subjective expectation of privacy" in the bedroom. *Gatlin*, 2014 ND 162, ¶ 5. Society recognizes as reasonable an expectation of privacy of a paying occupant in a closed bedroom. *See id.* ("This Court has recognized that overnight guests have Fourth Amendment protection in the home of a third party and has extended that protection to non-overnight guests."); *State v. Oien*, 2006 ND 138, ¶ 9, 717 N.W.2d 593 ("This Court has recognized that a guest generally has a reasonable expectation of privacy in a host's home."); *see also State v. Williams*, 2016 ND 132, ¶ 12, 881 N.W.2d 618 ("A hotel guest has a reasonable expectation of privacy in his hotel room[.]"). Therefore, the court's findings support the conclusion Steele had a reasonable expectation of privacy in the bedroom.

[¶12] The State argues "Lee requested that law enforcement remove Steele from her residence[.]" This Court has held "someone who is trespassing or has been legitimately expelled from the premises searched does not have an expectation of privacy that society recognizes as reasonable." *Oien*, 2006 ND 138, ¶ 9; *see Williams*, 2016 ND 132, ¶ 12 (stating "a hotel guest no longer has a reasonable expectation of privacy after he has been evicted from the hotel"). In this case, unlike in *Oien*, Steele was not legitimately expelled from the bedroom prior to the search. In *Oien*, the property manager gave the renter verbal and written notice the defendant was not allowed on the property and sent the defendant a "no trespass" order forbidding him from being on the property. *Oien*, at ¶¶ 2, 12, 13 ("Although [defendant] may have been an overnight guest, we conclude he is not entitled to the Fourth Amendment protections because he did not have a reasonable expectation of privacy in [the renter's] apartment after he became aware the landlord legitimately forbid him from being on Housing Authority property."). There is not anything in the record which demonstrates Steele received notice Lee wanted him removed. *See Williams*, at ¶ 12 ("The facts and circumstances must be considered to determine whether the defendant was evicted, including whether the hotel took any affirmative action that was a clear and unambiguous sign of eviction."). Because Lee had not expelled Steele from the bedroom or taken any affirmative action to inform Steele he was no longer welcome to stay in the

bedroom, Steele maintained a reasonable expectation of privacy in the bedroom.

[¶13] We hold Steele possessed a reasonable expectation of privacy in the bedroom.

B

[¶14] The State argues Lee had common authority to consent to the search of the entire home, including the bedroom occupied by Steele.

[¶15] "Consent may be given by an individual with actual or apparent authority." *Gatlin*, 2014 ND 162, ¶ 10. "Authority to consent to a search may be exclusive to one individual, or two or more people may have common authority." *Id.* "A co-occupant's consent to search extends only to the areas over which that co-occupant has common authority." *Id.* at ¶ 11; *see also State v. Holly*, 2013 ND 94, ¶ 19, 833 N.W.2d 15 ("Third-party consent does not, however, extend to a search of the premises under another person's exclusive control."). Common authority "does not rest on any proprietary interest, rather solely upon common authority." *State v. Swenningson*, 297 N.W.2d 405, 408 (N.D. 1980). When determining whether a party possesses common authority over the premises, courts look to "'mutual use of the property by persons generally having joint access or control for most purposes . . . .' The burden of establishing that common authority rests upon the State." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (quoting *United States v. Matlock*, 415 U.S. 164, 171, n. 7 (1974)).

[¶16] The district court found Lee knew Steele was in her home and that Steele had Lee's tacit permission to be in the home. It further found Lee knew which bedroom Steele occupied in the home and that Steele paid to be in the bedroom. Further, the officers found the bedroom door closed when they conducted the search. Based on the court's findings, Lee did not have joint access or control over the bedroom Steele rented and had permission to occupy. We conclude Lee did not have common authority over the bedroom, and she could not consent to a search of the bedroom.

C

[¶17] The State argues the officers reasonably believed Lee had actual or apparent common authority to consent to the search of the bedroom occupied by Steele.

[¶18] "[V]alid consent to search may be given by parties with actual or apparent common authority, when viewed from the officer's perspective." *State v. Asbach*, 2016 ND 152, ¶ 16, 882 N.W.2d 251 (quoting *State v. Zimmerman*, 529 N.W.2d 171, 175 (N.D. 1995)). "Apparent authority exists where a person of reasonable caution would believe, based on the facts available to the officer at the time of consent, that the consenting party had authority over the place or thing to be searched." *Gatlin*, 2014 ND 162, ¶ 11. However, "[e]ven when the invitation [to search] is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." *Rodriguez*, 497 U.S. at 188. The district court found the officers learned, before the search, that Lee knew what bedroom Steele was staying in, Steele had Lee's permission to be in the bedroom, and Steele paid to be in the bedroom. Viewing these findings from the officers' perspective, it was unreasonable to believe Lee could consent to the search. *See Gatlin*, 2014 ND 162, ¶ 11. The circumstances surrounding the search are such that a reasonable person would doubt Lee had common authority to consent to the search of the bedroom. *See Rodriguez*, 497 U.S. at 188. Therefore, the officers could not rely on Lee's consent to search the room.

[¶19] The district court cited *State v. Zimmerman*, 529 N.W.2d 171 (N.D. 1995), for the proposition "[v]alid consent to search may be given by parties with actual or apparent common authority when viewed from the officer's perspective." In *Zimmerman*, a game warden searching for unlawfully possessed deer obtained a warrant for a building on a farmstead. *Id.* at 173. The farm house was owned by the defendant's parents and the defendant owned the remainder of the farm. *Id.* He lived in a trailer a quarter-mile away from the farm house. *Id.* The warden, accompanied by another warden, searched the building covered by the warrant. *Id.* The defendant's father asked

6

a warden if he had found the deer yet, told the warden the deer were in the milking parlor, and then led the wardens to the milking parlor. *Id.* There were already tracks in the snow from the house to the milking parlor and other buildings. *Id.* at 175. Once at the milking parlor, the father opened the door and led the wardens to where the deer were hidden under a tarp. *Id.* at 173. This Court affirmed the district court's finding the defendant's father lacked common authority over the milking parlor. *Id.* at 175. However, we held the wardens "had good reason to believe" the father "had common authority over the farm." *Id.* Because "[t]he facts available to the wardens support a finding of apparent authority[,]" we concluded "[t]he wardens did not act unreasonably in searching the milking parlor." *Id.* at 176. This case is distinguishable from *Zimmerman* as a reasonable officer would not believe the officer could search a paying guest's bedroom with a closed door without the guest's consent.

[¶20] We conclude officers of reasonable caution would not believe Lee could consent to a search of the bedroom Steele was paying for and occupying with Lee's approval.

### III

[¶21] We have considered the State's other arguments and conclude they are either without merit or unnecessary to our decision. We reverse the order denying suppression and the criminal judgment. We remand to the district court to allow Steele to withdraw his guilty plea and for further proceedings consistent with this opinion.

[¶22] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr