Filed 1/22/25  P. v. Charowhas CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARK LEE CHAROWHAS,<br><br>    Defendant and Appellant. | G064123<br><br>(Super. Ct. No. FVI22003774)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of San Bernardino County, Christopher S. Pallone, Judge. Affirmed.

Alex Kreit, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa

A. Mandel and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

*       *       *

Two deputies pulled over motorcyclist Mark Lee Charowhas for traffic violations at night. Charowhas was wearing a thick jacket, and he had a pocketknife clipped to his hip in plain view. He also appeared nervous, was extremely shaky, would not answer certain questions, would not maintain eye contact, seemed as if he intended to fight or flee, and kept moving his hand toward different parts of his body, including his pockets. The deputies patted him down for additional weapons, and as they did so, Charowhas admitted to having metal knuckles in his pocket.

Charowhas was charged with possession of metal knuckles, among other things. Before trial, the defense moved to suppress all physical evidence obtained during the search. The trial court denied the motion, finding the search was reasonable under the Fourth Amendment. A jury convicted Charowhas of possessing metal knuckles.

Charowhas contends the trial court erred in denying his suppression motion. We disagree. Considering the totality of the circumstances, a reasonably prudent officer would have suspected Charowhas might be armed and dangerous; the deputies therefore had reasonable suspicion to conduct a patdown search for weapons.

FACTS

The following facts are derived from the hearing on Charowhas's motion to suppress. (*People v. Moore* (2006) 39 Cal.4th 168, 171 ["review of ruling on suppression motion limited to record of suppression hearings"].)

One evening in March 2022, at about 9:30 p.m., two Sheriff's deputies in a patrol car observed a motorcycle with an obstructed license

2

plate run a stop sign. They pulled over the motorcyclist, later identified as Charowhas.

The first officer, Deputy Geerlings, introduced himself, explained why he pulled Charowhas over, and asked for his driver's license. Deputy Geerlings took the license back to the patrol car to run a records check while his partner, Deputy Adams, stayed with Charowhas.

Deputy Adams then asked Charowhas several questions, and although Charowhas answered some, Deputy Adams "had to re-ask" others. Deputy Adams also observed that Charowhas "seemed uneasy [and] unsettled," as he kept moving his hand around his chest, on his person, down his sides, and towards his pockets. He also kept turning his head from side to side, and his eyes darted around, as if he was looking for a place to run to or was considering whether to assault the deputies. Charowhas also had a pocketknife visible on his hip and was wearing a thick motorcycle jacket, which Deputy Adams knew, based on his training and experience, was capable of concealing weapons.

While conducting the records check in his patrol car, Deputy Geerlings observed Charowhas moving his hands up near his torso area, looking around as if searching for a path to flee, and not keeping eye contact with Deputy Adams; Charowhas was also "extremely shaky" and "appeared to be nervous." Worried that Charowhas might try to flee or strike his partner, Deputy Geerlings got out of his vehicle and approached Deputy Adams and Charowhas.

Deputy Adams asked Deputy Geerlings to remove the pocketknife clipped to Charowhas's hip pocket, and Deputy Geerlings did so. The deputies then conducted a patdown search for weapons.

Deputy Geerlings asked Charowhas "if he had anything illegal on him." Charowhas nodded and said he had "a little bit of dope" in his front right pocket. Both deputies saw a plastic bag poking out of that pocket; Deputy Adams removed that and another bag with Charowhas's permission.

Deputy Geerlings then asked Charowhas if he had anything else. Charowhas answered that "he had forgot [*sic*] but he had brass knuckles." Deputy Geerlings asked Charowhas where they were, and Charowhas replied they were in "the pocket you're about to open"—that is, his lower left pocket. Deputy Geerlings then removed a pair of brass knuckles from that pocket. The entire encounter lasted about five minutes, and Charowhas was "field released" at its conclusion.

PROCEDURE

Charowhas was charged with transportation of a controlled substance (methamphetamine) for sale (Health & Saf. Code, § 11379, subd. (a); count 1), possession of metal knuckles (Pen. Code,[1] § 21810; count 2), and various aggravating circumstances (§ 1170, subd. (b)(2)).

Before trial, defense counsel moved to suppress all physical evidence seized as a result of the deputies' warrantless search of Charowhas, asserting any evidence arising from the search was the fruit of the poisonous tree. (See § 1538.5; U.S. Const., 4th Amend.; Cal. Const., art. I, §§ 10 & 13.) The People opposed the motion, asserting Charowhas's possession of a pocketknife, and his conduct which suggested an intent to fight or flee, gave the deputies reasonable suspicion to conduct a patdown search, and any evidence arising from the search was lawfully obtained and admissible. After

---

[1] All further undesignated statutory references are to this code.

4

hearing testimony from both deputies, the trial court found the search was reasonable and denied Charowhas's motion.

A jury convicted Charowhas of count 2 (possession of metal knuckles), but was unable to reach a verdict on count 1 (transportation of a controlled substance for sale). The trial court declared a mistrial on that count and dismissed it on the People's motion. Charowhas admitted the aggravating circumstance that his prior convictions are numerous or of increasing seriousness.

The trial court sentenced Charowhas to 16 months in county jail. Charowhas filed a timely notice of appeal.

DISCUSSION

The Fourth Amendment protects against "unreasonable searches and seizures." (U.S. Const., 4th Amend.) Evidence seized by law enforcement as a result of an unreasonable search is suppressed and therefore not available for use by the prosecution at trial. (See *id.*; § 1538.5; Cal. Const., art. I, §§ 10 & 13; *People v. McWilliams* (2023) 14 Cal.5th 429, 437.)

A brief investigatory detention, known as a "Terry stop," is deemed reasonable under the Fourth Amendment if the officer "has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" (*Kansas v. Glover* (2020) 589 U.S. 376, 380 (*Glover*); see *Terry v. Ohio* (1968) 392 U.S. 1, 21-22 (*Terry*).) The detaining officer must be able to "point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.) If a reasonably prudent officer would believe the suspect may be armed and dangerous, the officer may

5

conduct a limited patdown search of the suspect for weapons, and any weapons seized may be introduced in evidence. (*Terry*, *supra,* at pp. 30-31.)

"'The touchstone of the Fourth Amendment is reasonableness.'" (*People v. Ramirez* (2024) 104 Cal.App.5th 315, 326.) "As a matter of precedent and as a matter of sound reason, the establishment of reasonable suspicion will always be contextual. It will be informed by the totality of circumstances and objective scrutiny of the reasons given [by the officer]." (*People v. Flores* (2024) 15 Cal.5th 1032, 1051 (*Flores*).) "'Although a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" (*Glover, supra,* 589 U.S. at p. 380.)

"""In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.'" [Citation.] In doing so we do not consider each fact in isolation. Instead, 'we must consider "the totality of the circumstances—the whole picture."'" (*Flores, supra,* 15 Cal.5th at p. 1043.)

Applying those principles here, we must determine whether the circumstances gave rise to a reasonable suspicion that Charowhas was involved in criminal activity or that he was armed and dangerous. If so, the officers' conduct was justified.

Looking objectively at the totality of circumstances, we conclude the patdown search was reasonable. To begin with, Charowhas's extreme shaking, his nervous glancing and apparent search for a place to flee, his

6

inability or unwillingness to answer certain questions, and his arm movements toward his pockets were all suspicious. (*Flores, supra,* 15 Cal.5th at p. 1050 [although a person may certainly decline to engage in a consensual encounter with the police, "it remains true that 'nervous, evasive behavior' need not be ignored" and "is 'a pertinent factor in determining reasonable suspicion' based on all the circumstances"].)

Next, Charowhas was wearing a thick motorcycle jacket, which Deputy Adams knew, based on his training and experience, was capable of concealing weapons. (See *Pennsylvania v. Mimms* (1977) 434 U.S. 106, 112 ["any man of 'reasonable caution' would likely have conducted the 'pat down'" given the "large bulge under [the driver's] sports jacket"]; *People v. Collier* (2008) 166 Cal.App.4th 1374, 1376, 1378 [patdown of passenger reasonable where the car smelled of marijuana smoke, passenger was taller than deputy, and passenger wore baggy clothes capable of concealing a weapon].)

Finally, the presence of a weapon (the pocketknife), albeit a legal one, supported a reasonable suspicion that more weapons might be nearby. (See *U.S. v. Vinton* (D.C. Cir. 2010) 594 F.3d 14, 20–21 [sheathed fishing knife in plain view suggested that "additional weapons might be hidden elsewhere in the vicinity"; "even a lawfully-possessed fishing knife can be used as a dangerous weapon"]; *State v. Beane* (N.D. 2009) 770 N.W.2d 283, 288 ["Having seen [the folding knife in his pocket] and [his] furtive gestures, the officers certainly had a reasonable and articulable suspicion that Beane was armed and possibly dangerous"]; see also *Michigan v. Long* (1983) 463 U.S. 1032, 1052, fn.16 ["we have expressly rejected the view that the validity of a *Terry* search depends on whether the weapon is possessed in accordance with state law"].)

7

In sum, given Charowhas's shaking, nervous glancing, inability or unwillingness to answer questions, visible pocketknife, thick jacket capable of concealing weapons, and suspicious arm movements, a prudent officer under the circumstances would reasonably suspect that Charowhas may be armed and dangerous. The trial court therefore properly denied Charowhas's motion to suppress.

## DISPOSITION

The judgment is affirmed.

GOETHALS, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.

8